Olmsted
*v.*
Hoyt.

OLMSTED *against* HOYT and others.

HOYT and others *against* OLMSTED :

### IN ERROR.

Where the question of fact to be determined by a committee in chancery, on a bill to redeem mortgaged premises, was, whether a deed from *A* to *B* was fraudulent ; the plaintiff, in support of the deed, attempted to prove, that it was executed in consideration of more than 700 dollars, in money, loaned and paid by *B* to and for *A ;* and to contradict this evidence, the defendant offered testimony to prove, that at the time of the loan and payment claimed, *B* was a man of little or no property ; that he did not possess estate, real or personal, unincumbered, of the value of 300 dollars ; and that such estate as he had purchased, was mortgaged for the whole amount of the purchase money ; it was held, that such testimony was admissible.

THIS was a bill in chancery to redeem mortgaged premises, and for an account of rents and profits. The bill stated, that on the 4th of *October,* 1831, *Harvey Hickok,* to secure two promissory notes given by him to *Jonathan Camp* and *William J. Street,* mortgaged the lands in question to them ; that on the 5th of *November,* 1833, *Camp* and *Street* assigned these notes to *Thaddeus Hoyt,* accompanied with a quit-claim deed of all their interest in the premises ; that on the 4th of *September,* 1832, *Hickock* sold his interest in the premises to *Elias M. Hurlbut,* and at the same time, executed a quit-claim deed to him of the premises, with some other lands ; that on the 12th of *February,* 1833, *Hurlbut* sold his interest in the premises, with other property, to *Alfred Olmsted,* the plaintiff, and conveyed the same, by a deed with warranty ; that since the assignment to *Hoyt,* he has been in possession of the premises, taking the rents and profits to himself, and has not accounted for them.

The defendants, in their answer, averred, that on the 3rd of *September,* 1832, *Hickok* was justly indebted to *Hoyt* on book ; that *Hoyt* afterwards sued *Hickok* for this debt, obtained judgment and had the execution levied on *Hickok's* equity of redemption in the premises, which was regularly set off to and vested in *Hoyt,* previous to the 5th of *November,* 1833 ; and that at the time of the pretended conveyance from *Hickok* to *Hurlbut* of the mortgaged premises, *Hickok* was justly in-

debted to *Hoyt* on book, in the sum of 450 dollars; and that the sale by *Hickok,* and the quit-claim deed executed by him, of his interest in the mortgaged premises to *Hurlbut,* were made and executed without any good or valuable consideration, fraudulently and deceitfully, and with the corrupt intent to avoid the debt so due from *Hickok* to *Hoyt,* and to enable *Hickok* to deceive and defraud *Hoyt* in that behalf.

The plaintiff, in his replication, denied the fraud alleged in the plea.

In *April,* 1835, *John Q. Wilson* and *Thomas B. Osborne,* Esqrs. were appointed a committee to enquire into the facts stated in the bill and answer. At the next term of the court, this committee made their report, finding the conveyance in question to have been made for a valuable consideration, without fraud. They signed the report as "committee under oath." The defendants filed a remonstrance to the acceptance of the report, on the following grounds: 1st, That the committee did not, before they proceeded to the performance of the duties of their appointment, nor at any time before the testimony and hearing of the parties was closed and submitted to the consideration of the committee, take the oath by law provided for them.

2. That on the trial before the committee, it was proved, that the plaintiff held the lands in question as the trustee of *Hurlbut,* and had no beneficial interest therein; and that the deed from *Hurlbut* to the plaintiff was executed and delivered for the sole purpose of enabling the latter to make sale of such lands for the benefit of the former: that the defendants claimed, that the deed from *Hickok* to *Hurlbut* was fraudulent and void, as alleged in their answer: that the plaintiff denied, that such deed was fraudulent, and insisted, that it was given on good consideration and for money loaned to and paid for *Hickok;* and the plaintiff offered testimony, which, as he claimed, tended to prove such loan and payment. To contradict this testimony, the defendants offered to prove, by the testimony of competent witnesses, that *Hurlbut,* at the time of such pretended loan and payment of money, (which was claimed to exceed the sum of 700 dollars) was a man of little or no property; and specifically, that he had inherited about four acres of land from his father, and no other estate; that all the land he had otherwise acquired, was mortgaged for the purchase money; that he was not

*Fairfield,*
*June, 1836.*

Olmsted
*v.*
Hoyt.

possessed of money or other personal estate to the amount of 300 dollars; and consequently, that he could not have made such loan and payment. To this testimony the plaintiff objected; and the committee excluded it.

The court found the facts stated in the second specification true; but decided, that they were insufficient to set aside the report.

To prove the facts stated in the first specification, the defendants offered to prove, by *Thomas B. Osborne*, Esq., one of the committee, who was sworn as a witness, that the committee did not take the oath prescribed by law for such committee, until after the performance of their duties, nor at any time, before the testimony and hearing of the parties was closed and submitted to the consideration of the committee. Mr. *Osborne* objected to testifying, on the ground that he, as such committee, was not bound to testify at what time he took the oath. This objection was sustained, by the court; and the witness did not, and would not, testify on the point in issue.

There being no other evidence, the court found the facts stated in the first specification not to be true.

The defendants thereupon filed a motion in error and a motion for a new trial.

*Betts*, for the plaintiff in error, contended, 1. That the bill is insufficient; because it does not shew, that *Hickok* had any title to the lands in question, at the time he executed his mortgage deed.

2. That the report of the committee should have been set aside; because they were not legally qualified to act in that capacity. Where the law requires an oath to be taken as a qualification, it must be taken before the duty is performed. The terms of the oath are *prospective*. *Stat.* 425. (ed. 1835.) *Osborne* was not protected from giving the testimony required of him. It would only shew a mistake in the committee, and would not disgrace or disparage them. The remonstrance imputes no corruption or want of moral purity.

3. That the testimony offered by the defendants, to overthrow the plaintiff's claim of money loaned and paid, by *Hickok*, to and for *Hurlbut*, ought to have been received. This testimony went to shew, that the loan and payment in question were not made, because *Hickok* had not the ability to

make them. The remarks of Ch. J. *Hosmer*, in *Cook* v. *Swan*, 5 *Conn. Rep.* 140. 144. are not applicable to this case; for there the attempt was to prove the circumstances of the party, not at the time of the alleged payment, but " *a few years before*." Here, the testimony went to shew the situation of *Hickok*, at the time of the advancement claimed.

*Sherman* and *Swift*, contra, insisted, 1. That the bill was sufficient.

2. That the report of the committee was unexceptionable. In the first place, it appears from the face of the report, that the committee were " under oath ;" which imports, that they were sworn according to law. Secondly, the committee were not compellable to testify, that they were not so sworn ; because such testimony would contradict their report ; and because its tendency was to subject them to a civil action for the expenses of the trial. Thirdly, if they were sworn before they signed their report, it is sufficient.

3. That the testimony offered by the defendants, to repel the plaintiff's proof of a valuable consideration, was properly rejected, being strictly within the decision in *Cook* v. *Swan*, 5 *Conn. Rep.* 140. Such testimony was there held to be inadmissible. No contrary decision or *dictum* has been shewn, or is to be found.

CHURCH, J. This case comes before us, as well upon a motion in error as upon a motion for new trial. Upon the questions raised by the motion for new trial, we suggest no opinion, inasmuch as we concur, unanimously, in the result, that for the second cause of error assigned in the motion in error, the judgment of the superior court must be reversed.

The material question of fact under consideration, by the committee in chancery, was, whether the deed from *Harvey Hickok* to *E. M. Hurlbut*, was fraudulent ; the defendants, by their answer, averring the fraud, and the plaintiff denying it. To support the deed, evidence was introduced, attempting to prove, that it was executed in consideration of more than 700 dollars in cash, loaned by *Hurlbut* to *Hickok*, and money paid for him. To contradict this evidence, the defendants offered to prove, that at the time of such pretended loan and payment, *Hurlbut* was a man of little or no property ; that he did not

possess an estate, either real or personal, unincumbered, of the value of 300 dollars; and that such estate as he had purchased, was incumbered by mortgage, for the whole amount of the purchase money; and therefore, he could not probably have made such pretended loan and payment of money.

This evidence was rejected, by the committee; and upon remonstrance, that decision was sanctioned, by the superior court; and this is in the motion in error assigned as the second ground or cause of error.

The decision of this point in the court below, and now to be reviewed, it is understood, was governed, by a former decision of this court, in the case of *Cook* v. *Swan*, 5 *Conn. Rep.* 141. in which it was holden, that where the question was, whether a mortgage deed given to secure advancements of money, was fraudulent, as against creditors, after evidence of such advancements by the mortgagee, that the plaintiff could not be permitted to prove, that the mortgagee, at the time of the transaction, was a young man, and had recently commenced business, destitute of capital, and hence, was not of ability to make such advancements.

The essence of fraud consists chiefly in *motive*, and is seldom reached through the ordinary channels of direct and positive testimony. The nature of the evidence must be adapted to the character of the facts or transaction it is intended to establish; and therefore the law, in many cases, dispenses with the necessity of positive proof, and permits the introduction of circumstantial, presumptive or persuasive evidence. Where absolute certainty is unattainable, the degrees of probability are much varied, and much latitude must be allowed to the judgment in the application of circumstances. And evidence ought never to be adjudged irrelevant, which, according to ordinary experience, and the common observation of the motives and conduct of men, may fairly be supposed to influence and persuade candid and intelligent minds. The avenues to truth through the medium of human testimony, are, and will ever be, by reason of human imperfection, in a considerable degree, obstructed; and it does not become courts of justice, to add artificial impediments, from the apprehension that falsehood may possibly enter. Such a course, it is believed, will exclude much more of truth than of error.

In the present case, the enquiry was, whether the plaintiff had loaned and advanced 700 dollars, as the consideration of the deed in question. Who, in investigating this fact, would not instinctively enquire, what were his means of doing this? And who, upon being informed, that no adequate means had ever been discovered, would not, as instinctively doubt the fact? In a word, the question was, whether it would conduce, in any degree, to prove, that the advancements claimed were not made, to show, that the plaintiff had not the power of making them? We cannot, upon principle, doubt the admissibility of this evidence. Nor are we satisfied with the reasons announced for the different opinion expressed by this court, in the case of *Cook* v. *Swan.*

The late Chief Justice *Hosmer*, in giving the reasons of the court, in that case, says:

1. That such an enquiry would be remote. The evidence offered, it is conceded, did not, primarily and directly, prove a fraud, as a distinct fact; but it very reasonably conduced to prove a fact quite inconsistent with the claim of a *bona fide* consideration. The evidence offered was presumptive, and no more remote, that we can discover, than all other presumptive evidence. 1 *Stark. Ev.* 17.

2. That the enquiry would be interminable. By which, we suppose, is meant, that it would lead to inconvenient lengths. Enquiries of the same character have been very frequent, as well as indispensable, in judicial investigations, without incurring this objection. The enquiry was simply in regard to the pecuniary circumstances and ability of a party; certainly, a very common enquiry.

3. That the enquiry proposed is the basis only of conjecture, and leading to no correct inference. All presumptive evidence is, in some degree, the basis of conjecture, and does not always lead to a certainly correct inference; if it did, it would be rather *positive evidence* than presumptive. The reasoning of the learned judge would seem to go to the length of excluding presumptive evidence altogether. The truth is, if the evidence offered did not lead to a certain inference or result, it led to one very legitimate and persuasive, and such as naturally would and ought to influence a reasonable mind.

The law considers the investigations of fraud to be of a peculiar character; and to aid such investigations, has prescribed

*Fairfield,*
*June, 1836.*

Olmsted
*v.*
Hoyt.

certain badges or proofs of fraud, all founded upon the principles to which we have before referred, and which are particularly enumerated, by Lord *Coke*, in *Twyne's* case, 3 *Rep.* 80. and have become elementary. These are considered badges of fraud, because the common experience of mankind shows, that they seldom exist in connexion with open, fair and honest transactions. And yet they may so exist, and frequently have so existed, and therefore, do not certainly lead to a correct inference.

The judge proceeds to say, that "the ways of getting, as well as of losing property, are infinite;" but yet he does not show how this admitted truth enters into the merits of the question he is discussing. The question was not, how the mortgagee had or could have acquired property; but whether, at a given time, he had any.

Evidence of the character of this in question, we think, must frequently have been offered and received in the courts of *England* and this country; and yet with the exception of the case of *Cook* v. *Swan*, we do not find it objected to. It was admitted, without objection, and considered as very important, by the supreme court of the state of *New-York*, in the case of *Jackson* d. *Hooker* v. *Mather*, 7 *Cowen* 301.

We feel ourselves compelled, therefore, to dissent from the decision of this court in the case of *Cook* v. *Swan*, on the point here considered; and we do this with less reluctance, because we do not thereby introduce any new rule affecting the rights either of person or property.

The judgment of the superior court must be reversed.

In this opinion the other Judges concurred.

Judgment to be reversed.