## WALTER PERRY, RECEIVER
### vs.
## PASQUALE DeROSA, ET AL.

Superior Court      New Haven County      File #49965

Present:  Hon. JOHN RUFUS BOOTH, Judge.

Robert M. Dowling,             Attorney for the Plaintiff.

Sachs, Sachs & Sachs,        Attorneys for the Defendant.

**MEMORANDUM FILED FEBRUARY 3, 1937.**

BOOTH (JOHN RUFUS), J.  The remonstrance as filed sets forth sixteen claimed reasons of remonstrance.

Some of these reasons relate to a minority report unnecessarily filed by Michael J. Whalen, some represent questions of fact concerning values, some relate to facts claimed to have a bearing upon values and some are merely legal conclusions.

During argument it was conceded that the remonstrance was intended to be directed only to the majority report filed by William B. Kelly and Herbert W. Oviatt and that it was intended to represent but five claims. The brief filed by remonstrants bears out this theory.

In the first place it is claimed that the appraisers were not sworn to appraise the property involved before they commenced to perform their duties. This claim was not established by the evidence but the contrary appears.

In the second place it is claimed that the form of oath administered to the appraisers was defective.

The evidence disclosed that the oath administered was in the following form:

"Do you solemnly swear that you will visit the property at 1828 Dixwell Avenue, Hamden, that you will properly examine said property and will make an accurate and impartial appraisal of the same, and that you will render an opinion as to the present and reasonable value thereof, and that you will make a written report to the Court appointing you setting forth your appraisal and the fair and reasonable value you have set upon said property, and that in all respects you will discharge your duty to the best of your abilities, so help you God."

The appraisers were appointed by virtue of **Section 5083 of the General Statutes.** This section provides among other things that appraisers appointed thereunder shall "under oath" appraise the mortgaged property. No particular form of oath is therein provided. **Section 2234 of the General Statutes,** however, does prescribe the forms of oaths to be followed in certain instances, and while none is specifically designated as being required of appraisers, a form is provided for "all other persons of whom an oath is required", which form is as follows:

"You solemnly swear that you will faithfully discharge, according to law, your duties as . . . . to the best of your ability, so help you God."

While this is undoubtedly the strictly proper form to administer to appraisers it is the opinion of this Court that the verbal deviation therefrom in the oath as administered was so slight in character that it did not render the appraisal fatally defective. **Daly vs. Fisk, 104 Conn. 579.**

In the third place it is claimed that the report of the appraisers is defective because it does not set forth the appraisers' oath as administered.

In the body of the report as filed appears the following:

"We, the undersigned, have been appointed to appraise the following described parcel of land by order of said Superior Court made in the above entitled action on October 13th, 1936, and have been duly sworn on said date, to perform our duties as such appraisers according to law, and to make return thereof to said Court do hereby submit our report and appraisal."

At the bottom of said report after the signatures of the appraisers appears the following:

"Subscribed and sworn to before me this 15th day of October, 1936. Eleanore Eichman, Notary Public."

While as suggested in the remonstrants' brief the procedure adopted by the appraisers in the case of **Equitable Life Assurance Society vs. Slade, 122 Conn. 451,** is perhaps a faultless model, still as it appears from the record in the present case that a sufficient oath was taken by the appraisers before they entered on the duties of their appraisal, the omission to include the same in the report does not make the same fatally defective. **Huntington vs. Birch, 12 Conn. 142; Husted, et al vs. Greenwich, 11 Conn. 382.**

In the fourth place it is claimed that the appraisers did not act in concert while inspecting the property and that consequently the appraisal is defective.

According to the evidence Mr. Oviatt, one of the appraisers, went to the Town Hall in Hamden alone, copied from the assessors' records the size of the lot to be appraised and the size of the buildings thereon. Later he measured the height of the house located on the land and gave to his fellow appraisers all of the information thus obtained. The appraiser Kelly knew the size of the lot. He did not measure the size of the buildings but assumed Mr Oviatt's figures thereon were correct. It also further appears tnat in so far as the interior of the house is concerned each appraiser inspected the same individually but not in concert. All three of the appraisers in concert inspected the land and the outside of the buildings and later met according to arrangement, discussed values and a majority agreed upon the valuation figure contained in the report against which the remonstrance is directed.

The theory of the remonstrance in respect to this claim is that the hearing which appraisers as a quasi judicial body are required to hold in concert includes inspection and the

securing of such evidence as they may require. It is the opinion of the Court that the unsoundness of this theory is demonstrated by the language of our Supreme Court in **Congress Bank and Trust Company vs. Brockett, 111 Conn. 490, 492,** wherein it stated:

> "It is not necessary that all members of such a committee, commission or board should hear and consider the specific matter in issue, provided all had notice to be present and the opportunity to participate in its consideration with the other members."

In other words, while the appraisal must be a joint act the proceedings leading up to such act may include such personal knowledge as the appraisers may have or may acquire so long as there is a final opportunity for correction of an individual member's error if any there is, by action of the others. **Equitable Life Assurance Society vs. Slade, 122 Conn. 451.**

In the fifth place it is claimed that in arriving at a valuation of the property the appraisers employed a wrong method. This claim is based entirely on testimony given by the appraiser Kelly concerning his individual method of valuation. No evidence was offered as to the method employed by his co-appraiser, Mr. Oviatt.

While the testimony of Mr. Kelly concerning his method of arriving at value was somewhat vague and incomplete in certain details a fair interpretation thereof leads to the conclusion that he first determined there was no present market upon which to base values, that he then considered a great number of elements including reconstruction cost, rental value, location, past and potential value and ultimately arrived at a figure which represented the actual value of the property which figure coincided with that of his co-appraiser, Mr. Oviatt.

As stated in **Equitable Life Assurance Society vs. Slade, 122 Conn. 451, 458:**

> "While inquiry of the individual appraiser as to the principles and methods which he used is permissible where an appraisal is challenged on these grounds, the ultimate inquiry must be, not whether the individual appraiser made a mistake, but whether there was a mistake of fact or law which substantially affected the appraisal which was finally made."

In the instant case the Court is unable to find from the

evidence that in his method of arriving at the value of the property in question appraiser Kelly made any mistake of fact or law which substantially affected the appraisal as finally made by him and his co-appraiser, Oviatt.

For the foregoing reasons the remonstrance as filed is over-ruled and the report of the appraisers, Oviatt and Kelly, is hereby accepted.