## New Haven Water Company *vs.* The City of New Haven.

Third Judicial District, Bridgeport, April Term, 1927.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

Rates fixed by contract between a public service corporation and its customers, whether private persons or municipalities, may be modified by the State in the exercise of its police power except in cases where the right to regulate rates has been explicitly conferred upon the municipality by constitution or statute, or in cases involving the so-called "franchise contracts." Neither exception is applicable unless it clearly and unmistakably appears that the power of rate regulation has been delegated to, and exercised by, the municipality.

The State may authorize a municipal corporation to establish by contract the rates to be charged by a public service corporation, and the effect of the contract, during its life, is to suspend the governmental power of regulating rates and to render immaterial the question whether the rates fixed therein are confiscatory; but such authority must be restricted to contracts for a definite and reasonable time, for the State can neither itself surrender, nor grant authority to a municipality to surrender, its police power for an indefinite or an unreasonable time.

After the city of New Haven and the New Haven Water Company had entered into a contract which established the rates to be charged within the city limits, the General Assembly passed a Private Act providing that the terms of the contract "be and they are hereby made obligatory upon the said city and the said company, as though specifically authorized in their respective charters." *Held* that the Act was a clear delegation by the General Assembly of its rate-regulating power to the city.

As to the city, the contract provided that the rates should be fair and reasonable and that, if at the expiration of any period of five years they should be unreasonable, the city should have the privilege of securing a reassessment by arbitration; but as to the company, the rates fixed in the contract were made indefinitely obligatory and unalterable except in so far as they might be affected by an exercise of the city's privilege of arbitration. *Held* that, as to the city, the surrender of the police power was not for an indefinite or a grossly unreasonable period; as to the company, it was unlimited and, therefore, necessarily unreasonable.

New Haven Water Co. *v.* New Haven..

When a contract establishing rates is, as to one or both of the parties, indefinite or manifestly unreasonable in duration, and they are unable to agree upon a reasonable period, one or both, as the case may be, may apply to the Public Utilities Commission under Chapter 328 of the Public Acts of 1921, for a determination of reasonable rates for a reasonable duration.

It is immaterial whether the Public Utilities Commission determines the rates under a contract provision that they be "fair and reasonable" or under the statutory requirement that they be "just, reasonable and adequate for the public convenience, necessity and welfare," for they are synonymous.

A contract affecting the public interest will be interpreted so as to protect that interest; and a provision inserted for the special benefit of one of the parties will be construed most strongly against that party.

Article tenth of the contract in the present case, executed in 1902, provided that the company should pay all taxes upon its tangible property, but that the city should bear a proportionate part of "any franchise or other tax, except upon its tangible property" which might be assessed against the company. *Held* that this clause could not be construed to include the Federal income and capital stock taxes assessed against the company under the Acts of 1916 and 1909, respectively, neither of which could have been within the contemplation of the parties at the date of the contract, and for neither of which the company had demanded payment for seventeen years and until 1926; and that, in consequence, the city is not liable for the income and capital stock taxes heretofore paid by the company, nor for future assessments of these taxes, but the same must be paid by the company as long as they shall be assessed and the contract shall continue.

The tenth article further provided that if the city failed to bear its share of the taxes therein described, it should pay the company for all water used by it during the period of such failure. *Held* that since the city had not breached its obligation with respect to such taxes, the company must continue to furnish the city with water for public and municipal purposes, including water for schools and for fire protection, without cost or charge as provided in the first article of the contract.

Argued April 19th—decided October 3d, 1927.

ACTION for a declaratory judgment determining the legal relations arising out of a contract between the parties, and for other relief, brought to the Superior Court in New Haven County and reserved by the

court (*Ells, J.*), upon the admitted allegations of the complaint, for the advice of this court.

The plaintiff is a private corporation chartered by the General Assembly in 1849, to supply New Haven with pure water for public and domestic use, and has supplied water to the city of New Haven since January 1st, 1862. Through consolidations with other companies it supplies eight other towns with water, and through stock control of another company supplies another town with water. It owns property and pays taxes in sixteen towns in New Haven and Middlesex counties. It has acquired and developed available sources of supply within a distance of several miles from New Haven, and built dams, reservoirs and pumping stations for the distribution of water therefrom to New Haven and these other towns. It has purchased land and water rights in the towns of North Branford, Guilford, Madison and Killingworth, in order to conduct the waters of the Hammonassett River and streams westerly thereof, by conduits and tunnels, into a large reservoir in North Branford, and thence to distribute it to New Haven and the other towns. The plaintiff has begun to construct, and there is now under construction in North Branford, a large dam to impound the waters of these rivers and streams. On February 17th, 1902, the plaintiff and the city of New Haven entered into a contract which, among other clauses, provided: The plaintiff will furnish the city with a full and adequate supply of water for all reasonable present and future public and municipal purposes, including water for school and fire protection purposes in certain designated wards, for all time after February 20th, 1902, or until the termination of the contract. If the works of the company shall at any time prove inadequate for these purposes and uses, the city shall have the privilege of annulling the con-

tract.  The city will from time to time, at the request of the company, adopt and enforce reasonable rules and regulations to prevent waste of water.  The company agrees that the rates for water to be charged consumers of water in the city, shall at all times be fair and reasonable, and if the city and company cannot agree as to rates which the city at any time shall consider unreasonable, the matter shall be submitted to arbitration.   The arbitrators shall not fix a rate for water which shall leave to the company an income insufficient to provide means with which to pay its operating costs, including interest on indebtedness, and all labor, material, salaries, damages, renewals and extensions, repair and replacement of plant, and all taxes, together with a sum sufficient to pay the present rate of dividend upon its present capital stock, and a reasonable return upon such other capital as shall in the future be invested in additions or extensions of the plant of the company not exceeding the present rate of dividend.  The company shall, whenever in the opinion of its board of directors its income exceeds the sum required to properly care for the above purposes, reduce its rates of water to the inhabitants of the city.  The contract gives at length the schedule of rates to be charged by the company.

If at any time it shall be determined in or by judicial proceedings that the company has not complied with the terms of the contract, or has refused to abide by the arbitration provided for in the contract, the city shall have the right to purchase all the property, assets and franchises of the company, upon paying to it a just and fair compensation therefor.  In case the company shall sell or transfer its property and franchises to any other person or corporation, or in case a majority of the members of the board of directors shall not be residents of the city, or the company shall be-

come a member of any trust or syndicate, the city thereupon shall have the right to purchase its property, assets and franchises.

"*Tenth.* Said Company shall pay such taxes as may be levied according to law upon its tangible property, including pipes, mains and reservoirs, within the City of New Haven and other towns in which such property may be located. In case any franchise or other tax, except upon its tangible property, shall be assessed against said Company, said City shall save said Company harmless from such part thereof as shall be measured by the ratio of the gross revenue received from consumers within the City of New Haven, to the gross revenue of said Company from all its consumers. Said City may, at its option, refuse to save said Company harmless; as heretofore provided, and in case of its failure so to do, it shall, without other liability to said Company by reason thereof, pay, during such period of failure, for water for fire protection the sum of twenty dollars per year for each hydrant, and for all other water used by said City at the lowest meter rates to private consumers, as per schedule then in force, less a discount of twenty-five per cent (25%) therefrom.

"*Eleventh.* At the end of twenty-five years from the 20th day of February, A. D. 1902, and at the end of every successive period of twenty-five years thereafter, if said City shall determine to purchase the property, assets and franchises of said Company, said Company will then sell and convey the same to said City upon said City paying a just and fair compensation therefor, which said compensation, if said parties cannot agree, shall be determined by a committee to be appointed by the Superior Court, in the manner provided by the Act passed by the General Assembly at its January session, 1881. . . .

"*Fourteenth.* Neither of the parties hereto shall be at liberty to avoid or set aside this contract, without the consent of the other, notwithstanding any breach thereof, except in the manner provided herein.

"*Fifteenth.* Said City and said Company will unite in an application to the General Assembly, at its next session, for the passage of an act making the terms of this contract obligatory upon both parties as though specifically authorized in their respective charters."

The company made a stipulation to the contract, on its date, that nothing in the contract should be so construed as to prevent the city from sinking or driving wells on its property and using the water therefrom on the premises, provided that water shall not be distributed by the city either for public or private purposes, in pipes or mains. And, further, that the contract shall not be so construed as to charge any person a higher price for a continuance of his present service, than he has heretofore been charged for the same service, unless changed by arbitration as provided in the contract. The company also stipulated that application shall, at the option of the city, be made to the General Assembly for the confirmation thereof, when the contract is presented for confirmation.

The complaint further recites:

"The plaintiff has hitherto paid all taxes upon its tangible property as provided in said contract, and the City of New Haven has hitherto paid to the plaintiff the proportion of the taxes fixed in said paragraph tenth, upon the gross earnings of the plaintiff, under Section 1370 of the General Statutes, and the amendments thereto.

"The plaintiff has paid to the United States the corporation income taxes (imposed by Act of Congress of August 5, 1909, and amendments thereto), and the capital stock tax (imposed by Act of Congress

of September 8, 1916, and amendments thereto), assessed against the plaintiff.

"The defendant has not saved the plaintiff harmless from any part of any of said income and capital stock taxes, nor has the defendant paid the plaintiff for the water supplied to the defendant for fire protection and other municipal purposes.

"No demand was made by the plaintiff upon the defendant, with respect to such corporate income and capital stock taxes, until on or about August 20, 1926, when the defendant refused to pay said taxes."

"On June 1, 1903, the General Assembly of the State of Connecticut passed a private Act, as follows:

'Amending the Charters of the City of New Haven and of the New Haven Water Company.

'Resolved by this Assembly:

'Section 1. That the terms of a certain contract entered into by and between the City of New Haven and the New Haven Water Company on the seventeenth day of February, 1902, concerning the supplying of water for the use of said city and its inhabitants, be and they are hereby made obligatory upon the said City of New Haven and the said New Haven Water Company, as though specifically authorized in their respective charters.

'Sec. 2. A certain stipulation executed and delivered by the New Haven Water Company to the City of New Haven on the seventeenth day of February, 1902, concerning the construction of the contract referred to in section one hereof, is hereby made obligatory upon the said New Haven Water Company whenever said City shall exercise its option to claim the construction, or any part thereof, in said stipulation particularly set forth.'

"The maximum rates fixed in said contract, to be charged to private consumers, have been maintained

during the entire time said contract has been in force, and said maximum rates are still in effect.

"The plaintiff claims that its revenues, during the term of the contract, Exhibit A, hereinafter referred to, have been sufficient only to pay its operating costs, including interest on indebtedness, and all labor, material, salaries, damages, renewals, extensions, depreciation, repairs and replacement of plant, and taxes, together with a sum sufficient to pay dividends of eight per cent upon its capital stock outstanding when said contract was executed, and dividends of eight per cent upon such additional capital stock as has been issued since that date, and leave a small annual surplus, most of which has been invested in the plant.

"The plaintiff will make the following claims before the Public Utilities Commission, if the court should decide that said Commission has jurisdiction: By reason of the great increase in the cost of all labor and materials, since February 17, 1902, and by reason of the heavy annual charges which would be necessary in order to raise the funds to carry out the improvements hereinbefore mentioned, the rates specified in said contract are no longer just and reasonable, and it is no longer just and reasonable that water should be furnished to the city of New Haven for fire protection, and for all other public and municipal purposes, without charge, and the rates prescribed in said contract will not be adequate to enable the company to discharge its duty to the public and the city of New Haven and neighboring towns, and to yield to the plaintiff a fair return upon its property, used and useful in the public service.

"The defendant denies that under said paragraph tenth it is, or has been, under obligation. to pay any portion of said corporation income or capital stock taxes, or to pay any sum to the plaintiff by reason of

its failure so to do, either as to such income or capital stock taxes hitherto assessed, or to such as may be assessed in the future."

The plaintiff claims a declaratory judgment:

"1. Are the rates to be charged by the New Haven Water Company as provided in the contract, Exhibit A, unalterable? Or, are these rates subject to be increased by the Public Utilities Commission beyond the schedule of maximum rates fixed in and by the contract, Exhibit A, within the city of New Haven, provided said commission shall find that said rates as charged therein to and within the city of New Haven are discriminatory or less than just, reasonable and adequate to provide properly for the public convenience, necessity and welfare?

"2. That under the contract between the city of New Haven and the New Haven Water Company, dated February 17, 1902, the plaintiff, as to assessments heretofore made, was entitled to be saved harmless from such part of the Federal corporation income taxes and capital stock taxes as is measured 'by the ratio of the gross revenue received from consumers within the city of New Haven, to the gross revenue of said company from all its consumers,' and that if the city failed so to do, said company was entitled to be paid, during the period of failure, for water for fire protection, the sum of twenty dollars ($20) per year for each hydrant, and for all other water used by said city, at the lowest meter rates to private consumers, as per schedule at the time in force, less a discount of twenty-five per cent (25%) therefrom."

"3. That under the contract between the City of New Haven and the New Haven Water Company, dated February 17, 1902, the plaintiff will be entitled, as to future assessments, to be saved harmless from such part of the Federal corporation income taxes and

capital stock taxes "as shall be measured by the ratio of the gross revenue received from consumers within the City of New Haven, to the gross revenue of said Company from all its consumers," and that if the City shall fail so to do, said Company will be entitled to be paid, during the period of failure, for water for fire protection, the sum of twenty dollars ($20) per year for each hydrant, and for all other water used by said City, at the lowest meter rates to private consumers, as per schedule at the time in force, less a discount of twenty-five per cent (25%) therefrom."

*George D. Watrous,* for the plaintiff.

*Samuel A. Persky,* for the defendant.

WHEELER, C. J.   We held in *Ansonia* v. *Ansonia Water Co.,* 101 Conn. 151, 125 Atl. 474, in conformity with the decisions of the Supreme Court of the United States, that rates fixed by contract between a public service corporation and its customers, whether private persons or a municipality, may be superseded by rates fixed by the State in an appropriate exercise of the police power, except in two classes of cases: "First, those in which the State has in its Constitution or by statute explicitly conferred upon the municipality the power to establish by ordinance the rates to be charged by public service corporations operating within its limits," and second, "the so-called 'franchise contract' cases."   We are concerned with the first of these exceptions.   The same rule must hold whether the power conferred by statute upon the municipality to establish rates be by contract or by ordinance.   The exceptions, we say, are confined to cases "in which it clearly and unmistakably appears, first, that the State has delegated its rate-regulating power to the munici-

pality, acting within its geographical limits, and, second, that the municipality has with equal clarity and certainty exercised its delegated power by a contract fixing the rate to be charged for a limited term."

The General Assembly, in the Act we quote in the statement, specifically made the terms of this contract obligatory upon the city and company. It was more than the delegation of power to fix the rates and make the contract; it was not only the legislative approval of the rates and the terms of the contract as made, but also the making of the same obligatory upon city and company. It was as though the contract had been made directly with the General Assembly. The Act was a clear delegation by the General Assembly of its rate-regulating power to the municipality. The chief consideration to the company was the agreement of the city that it should have the exclusive right to sell water to the inhabitants of the city at the schedule of rates specified. The consideration to the city was that its inhabitants were to get an adequate supply of water at the stated rates and that the rates to be charged to all consumers of water in the city should at all times be fair and reasonable, and that it was to receive the water required for public purposes free, and have the right to purchase the company's property, assets and franchise at the end of twenty-five years from February 20th, 1902; and every successive period of twenty-five years thereafter.

The obligation of the company under the contract is unlimited in duration; that of the city is also unlimited unless it shall consider the rates charged for water to be unreasonable, whereupon, if the city and company cannot agree upon the rates, the matter shall be submitted to arbitration, and when it is confirmed by the court, it shall be conclusive for a period of at least five years from the date of the arbitration report. In

effect, the Act of the General Assembly amended the charter of the city, and not only ratified the contract it had entered into with the water company, but made it obligatory upon it.  This was as though authority to make this contract had been conferred in the charter of the city, and it had made the contract pursuant to such authority, and subsequently the General Assembly had not only ratified the contract but expressly made it obligatory upon its agent, the city. In effect, too, it amended the charter of the water company.  The General Assembly had before it the contract, as to the water company a perpetual contract, which by its terms the company could not change.  It was this contract, unlimited in its duration, which the General Assembly authorized and made obligatory upon the parties to it.

The city contends that since the State has the power to enter into contracts unlimited in duration it may delegate this power to the city.  The water company contends that the State cannot by contract forever disable the legislative branch of the government from regulating the rates fixed by contract between a public service corporation and a municipality, since this would entail the permanent surrender of its exercise of the police power.  The water company emphatically asserts that this court has determined the precise question involved in the case of *Ansonia* v. *Ansonia Water Co.,* 101 Conn. 151, 125 Atl. 474.  We have already indicated the extent to which this opinion went.  It did not determine the question before us.

The ultimate question which we must decide is controlled by the Federal decisions.  We quote from one decision of the United States Supreme Court; it is decisive of the settled rule of that court. *St. Cloud Public Service Co.* v. *St. Cloud,* 265 U. S. 352, 44 Sup. Ct. 492. The city of St. Cloud, by ordinance, granted to the

public service company the right to construct and maintain for thirty years works for the manufacture, distribution and sale of gas at a specified rate. The company intended to increase this rate; upon the city's threat to interfere with the collection of the proposed increased rate, the company made application for an injunction and for an adjudication that the rate of the ordinance was confiscatory. The court held the ordinance and the acceptance of the franchise under it was a contract. Its opinion, by Mr. Justice Sanford, declared: "It has been long settled that a State may authorize a municipal corporation to establish by an inviolable contract the rates to be charged by a public service corporation for a definite term, not grossly unreasonable in time, and that the effect of such a contract is to suspend, during its life, the governmental power of fixing and regulating rates. . . . And where a public service corporation and the municipality have power to contract as to rates, and exert that power by fixing the rates to govern during a particular time, the enforcement of such rates is controlled by the obligation resulting from the contract, and the question whether they are confiscatory is immaterial. *Southern Iowa Electric Co.* v. *Chariton,* 255 U. S. 539, 542 [41 Sup. Ct. 400]; . . . *Paducah* v. *Paducah Ry. Co.,* 261 U. S. 267, 273 [43 Sup. Ct. 335]; *Georgia Ry. Co.* v. *Decatur,* 262 U. S. 432, 438 [43 Sup. Ct. 613]; *Home Tel. & Tel. Co.* v. *Los Angeles,* 211 U. S. 265, 273 [29 Sup. Ct. 50]." The right of a city to contract away its right as to the rates to be charged by a public service corporation, is a limitation imposed upon the police power. Except as so limited, its power cannot be contracted away. The State may not authorize a municipality to establish, by contract, rates to be charged by a public service corporation for a definite term which is unreasonable in time; it cannot au-

thorize a contract as to rates for an unlimited or perpetual term, which necessarily would be grossly unreasonable in time, since this would be a surrender by the State of its exercise of the police power of fixing and regulating rates. In *Atlantic Coast Line R. Co.* v. *Goldsboro,* 232 U. S. 548, 558, 34 Sup. Ct. 364, the court said: "It is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise." We declared in *Ansonia* v. *Ansonia Water Co., supra:* "The root of the matter is that the rate-regulating power of the State is a limitation on the right to fix rates by private contract; and that therefore the rightful exercise of that governmental power cannot be said to impair the obligation of such contracts." P. 163. "All the cases," we say at page 159, "in which a contract between a municipality and a public service corporation establishing the rates to be charged by such corporation, has been held by the Supreme Court of the United States to suspend, during the life of the contract, the governmental power of fixing and regulating rates, divide themselves into two classes," namely, those to which we have referred in an earlier part of the opinion. *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 28 Sup. Ct. 529; *Walla Walla City* v. *Walla Walla Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77; *Paducah* v. *Paducah Ry. Co.,* 261 U. S. 267, 43 Sup. Ct. 335; *Los Angeles* v. *Los Angeles City Water Co.,* 177 U. S. 558, 20 Sup. Ct. 736; *Puget Sound T., L. &*

*P. Co.* v. *Reynolds,* 223 Fed. 371, 375; *Barre* v. *Perry & Scribner,* 82 Vt. 301, 73 Atl. 574.

The contract between the city and water company would not be void *in toto,* though the rate provision was subject to modification by public authority. It and every similar contract as to rates carries with it the implied provision that it must not contravene the police power in respect to the duration of the contract and that if it does it must yield to modification by lawful authority. So far as the parties to the contract are concerned, the rates contracted for must stand unless changed by their agreement or by public authority. The contract as to the city, while for an indefinite period, does not contract away the police power, since it provides that the rates must be fair and reasonable, and gives a remedy to the city by way of arbitration if the rates charged are unreasonable, and particularly specifies the items which shall be taken into consideration by the arbitrators in fixing rates which are fair and reasonable. It also provides that the award shall be conclusive for at least five years. It results that the city may have the rates reassessed at intervals of five years. This is a limitation upon the indefinite term of the contract as to rates. An unlimited provision coupled with a power of arbitration for definite periods does not surrender the police power for an unlimited, or for a grossly unreasonable, period. The rates may be changed at every arbitration period. The contract as to the water company is for an indefinite period. A provision for the indefinite duration of the contract as to the water company is a surrender of the police power and beyond the power of the General Assembly to itself grant, or to delegate the power to grant, to a municipality. There is no provision for arbitration similar to that given the city. Had the provision for arbitration been equally applicable to the

water company, no claim could have been made by it that the contract as to it was for an indefinite period, since the rates would have been subject to reappraisement every five years. Under the Federal decisions we have quoted from and *Ansonia* v. *Ansonia Water Co., supra,* rates which are fixed by a contract authorized by the legislature for a definite term, which is not unreasonable in its duration, are controlled by the terms of the contract, "and the question whether they are confiscatory is immaterial." Rates which are fixed by a contract authorized by the legislature for an indefinite term, or an unreasonable term, are in violation of the police power, since their duration extends beyond a reasonable period. If the contract be for an indefinite term, or an unreasonable term, and the parties cannot agree as to a reasonable period of duration of the rates, upon proper application, the Public Utilities Commission may, under Chapter 328 of the Public Acts of 1921, determine whether the duration of the rates is unreasonable—one for an indefinite term would necessarily be unreasonable—and so finding, fix the duration and their amounts. Since the duration of the rates in the contract before us as to the water company is for an indefinite term, the water company may at any time make application to the Public Utilities Commission for a finding that this term is unreasonable, and fixing a reasonable term and the rates as to it for such term. Courts will not interfere with the legislative authorization as to rates except in clear cases. But where the exercise of the police power in fixing rates for an unlimited time is manifestly unreasonable courts will interfere. *State* v. *Bassett,* 100 Conn. 430, 433, 123 Atl. 842; *State* v. *Porter,* 94 Conn. 639, 642, 110 Atl. 59. "The legislative department is the judge, within reasonable limits, to determine what public convenience and public welfare require, and the wis-

dom of its legislation is not the concern of the courts."
*State* v. *Bassett, supra,* 432. Whether the commission,
or the court on appeal, makes the determination of the
rates under the provision of the contract which re-
quires that they be fair and reasonable, or under the
terms of Chapter 328 of the Public Acts of 1921, which
in effect provides that the rates must be just, reason-
able and adequate for the public convenience, necessity
and welfare, becomes immaterial, since both provisions
mean the same thing. "Just" is the equivalent of
"fair," and rates which are adequate to enable the
water company to provide properly for the public con-
venience, necessity and welfare, are reasonable rates.

The tenth article of the contract provides that in
case any franchise or other tax, except upon its tan-
gible property, shall be assessed against the company,
the city shall save the company harmless from a de-
fined part thereof, or, on failure so to do, it shall pay a
specified sum for water for fire protection, and for all
other water used by the city the then lowest meter
rates to private consumers less 25% discount there-
from.

The United States has assessed against the company
an income tax under Act of Congress, August 5th, 1909,
and a capital stock tax under Act of Congress of Sep-
tember 8th, 1916, which the company has paid, and
the city has neither saved the company harmless from
the payment of these taxes nor paid it for the water
supplied for fire protection and other municipal pur-
poses. The company made no demand upon the city
for these taxes until on or about August 20th, 1926.
The liability of the city to pay these taxes depends
upon whether the income and capital stock taxes are
included in the words "any franchise or other tax,
except upon its tangible property." They are suscep-
tible of this construction. They are also susceptible

of a construction which would exclude them from these terms. They may refer to taxes imposed by the State or municipality or both, or to all kinds of Federal taxes. The language is thus ambiguous. It is to be construed as including those kinds of taxes which the parties to the contract intended them to include. *Leonard* v. *Dyer,* 26 Conn. 172; *Bean* v. *Atwater,* 4 Conn. 3, 10. Several canons of construction are applicable. Since the public interest is affected, the language should be construed so as to protect that interest. Since this phrase of the contract was inserted for the benefit of the water company, its language must be construed most strongly against the company.

Applying the rule, *ejusdem generis* to this phrase, the Federal income and capital stock taxes cannot be brought within it. These taxes were not in existence when this contract was made and there is nothing in the record to indicate that the parties anticipated the subsequent enactment of legislation creating these new modes of taxation. Moreover, the history of these taxes makes it clear that the parties to the contract never could have intended to include these taxes within this phrase. A Federal income tax had been declared unconstitutional. A constitutional amendment, proposed and enacted subsequent to the making of this contract, made the enactment of the income tax in 1909 possible. The capital stock tax of 1916 was enacted as a substitute for the corporation tax of 1909. Both taxes were, in 1902, foreign to the thought and business of the country; neither was within the contemplation of these parties.

The authorities reach a like conclusion in related instances. *Des Moines Union Ry. Co.* v. *Chicago Great Western Ry. Co.,* 188 Iowa, 1019, 177 N. W. 90, and cases cited; *Catawissa R. Co.* v. *Philadelphia & Reading Ry. Co.,* 255 Pa. St. 269, 99 Atl. 807; *Sharon Ry.*

*Co.* v. *Erie R. Co.*, 268 Pa. St. 396, 112 Atl. 242; *Park Building Co.* v. *Yost Fur Co.*, 208 Mich. 349, 175 N. W. 431; *Haight* v. *Pittsburgh, Ft. W. & C. R. Co.*, 73 U. S. (6 Wall.) 15.

The water company has paid the Federal income tax for seventeen years and the capital stock tax for nearly ten years, and never until August 20th, 1926, made demand upon the city that it was entitled to be saved harmless from the payment of these taxes, yet the city had not only paid the company the proportion of taxes upon gross earnings of the plaintiff as provided in Article Tenth of the contract, but also the franchise tax enacted in 1915 as an amendment to General Statutes, §1370. Presumably the water company knew during this long period what taxes it had intended to include under this phrase. Its failure to either claim or demand these taxes is the most conclusive evidence of its understanding that they were not included within the phrase defining the liability of the city for taxes. The practical construction of the parties, for so long a period, of this part of the contract, which involved the yearly or oftener payment of two additional taxes, is most persuasive evidence of the true construction to be given this phrase. *Volk* v. *Volk Mfg. Co., Inc.*, 101 Conn. 594, 601, 126 Atl. 847; *Safford* v. *Morris Metal Products Co.*, 97 Conn. 650, 653, 118 Atl. 37; *Construction Information Co.* v. *Cass,* 74 Conn. 213, 217, 50 Atl. 563. The city is not liable for the income and capital stock taxes heretofore paid by the water company, nor will it be obligated to save the company harmless from future assessments of these taxes, but the same must be paid by the company so long as they continue to be assessed and this contract shall continue. The water company must furnish the city with water for public and municipal purposes, including water for school and fire protection

purposes, without cost or charge as provided under the provisions of Article First of the contract.

We answer the questions upon which our advice is asked as follows: (1) The rates of the contract are not unalterable, but are continually subject to the exercise of the police power of the State when their duration is an unreasonable one. (2) The rates fixed in and by the contract may be increased or lowered by the Public Utilities Commission upon their finding that the duration of the contract is an unreasonable one and that the rates charged are not fair and reasonable to the New Haven Water Company, and thereupon they may fix a reasonable period for the duration of these rates and fix reasonable rates. (3) The city of New Haven is not obliged to save the water company harmless from such part of the Federal corporation income taxes and capital stock taxes as is measured "by the ratio of the gross revenue received from consumers within the city of New Haven, to the gross revenue of said company from all its consumers," which it has heretofore paid, or may hereafter be obliged to pay. (4) The water company must furnish the city with water for public and municipal purposes, including water for school and fire protection purposes, without cost or charge as provided under the provisions of the contract.

In this opinion the other judges concurred.