CITY OF NEW HAVEN *vs.* THE NEW HAVEN WATER COMPANY ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

390

Argued March 7th—decided May 2d, 1934.

*Harrison Hewitt* and *William B. Gumbart*, with whom were *Harold E. Drew* and *Arthur L. Corbin, Jr.*, for the appellant (named defendant).

*Samuel A. Persky*, for the appellee (plaintiff).

*Ward Church*, for the appellee (defendant town of North Haven), with whom, on the brief, was *Curtis K. Thompson*, for the appellee (defendant town of West Haven).

*F. Raymond Rochford*, for the appellee (defendant town of Hamden), and *Arthur T. Connor*, for the appellee (defendant town of East Haven).

*John L. Collins, amicus curiae,* with whom was *H. Roger Jones,* Assistant Attorney-General, and, on the brief, *Warren B. Burrows,* Attorney-General, for the public utilities commission.

HINMAN, J. The New Haven Water Company, hereinafter referred to as the company, was organized under a charter granted by the General Assembly in 1849. Into it have been merged several other chartered water companies and it supplies water to and in several towns in addition to New Haven. In 1902 the company entered into a contract with the city of New Haven, the provisions of which included that the company should furnish the city with water for public and municipal purposes upon terms therein specified. It also provided that the rates to be charged to consumers in the city should be fair and reasonable, and if the city should consider the rates charged to be unreasonable and could not agree with the company with reference thereto the matter should be submitted to arbitration in the manner therein provided. The contract prescribed a detailed schedule of rates to be charged to consumers from and after May 1st, 1902. The company made various extensions of its plant and system from time to time; in 1925 it acquired the necessary land and commenced construction of a large reservoir in North Branford and works appurtenant thereto, the cost of which up to 1931 was about seven million dollars. In 1927 the company brought an action against the city claiming a declaratory judgment in respect of the rights, duties, powers, privileges, and immunities under the contract between it and the city and the statutes of the State, which action was reserved for the advice of this court. *New Haven Water Co. v. New Haven,* 106 Conn. 562, 139 Atl. 99. Upon that reservation we advised (p. 581) that: "(1) The rates

of the contract are not unalterable, but are continually subject to the exercise of the police power of the State when their duration is an unreasonable one. (2) The rates fixed in and by the contract may be increased or lowered by the Public Utilities Commission upon their finding that the duration of the contract is an unreasonable one and that the rates charged are not fair and reasonable to the New Haven Water Company, and thereupon they may fix a reasonable period for the duration of these rates and fix reasonable rates."

On May 26th, 1931, the company filed with the public utilities commission, hereinafter referred to as the commission, a schedule of rates to be charged in the towns outside the city of New Haven, and its petition praying that the commission should, if it found the existing rates charged to the city to be discriminatory or more or less than just, reasonable, and adequate to enable the company to provide properly for the public convenience, necessity, and welfare, determine and prescribe the just and reasonable maximum charge to be thereafter made for service in the city. Since 1902 the rates for all water service in the city had remained as set forth in the schedule contained in the contract. Prior to about 1920 the rates in the outside towns were on the same level as those in the city, but subsequently were increased to a level of twenty to twenty-five per cent higher than the rates in force in the city. The schedule of rates proposed in 1931 for consumers both within and outside the city involved an increase over existing rates the percentage of which, as to consumers both within and outside the city, was uniform, but by reason of the previous increases the rates for the outside towns were considerably higher than those proposed for consumers in New Haven, and certain of these towns filed a protest against this difference in rates. By agreement of all

parties the hearings on all petitions were consolidated, and the commission, having heard all of the parties, made its finding and order dated May 2d, 1932.

The commission found that the duration of the agreement as to rates contained in the contract between the company and the city is unreasonable; that the rates for water service in force in the city under the terms of the contract are less than just, reasonable, and adequate to enable the company to provide properly for the public convenience, necessity and welfare; that therefore the commission has jurisdiction under the police powers of the State delegated to it by the legislature to fix reasonable maximum rates and charges for all water service in the city. It further held that in prescribing rates for the suburban towns and within the limits of the city it might consider the company's plant as a consolidated or unified system; also that the rates for public fire protection and municipal buildings in the city are an essential part of the rate structure of the company, and in prescribing a proper rate as a whole the reasonable or proper income for this service should be taken into consideration.

It appears from the commission's finding that the company made no claim that rates should be determined upon the basis of fair return on the fair value of its property devoted to the public service, but limited its claim to its estimated fiscal requirements, and that the rates which the commission prescribed, while different from the set-up submitted by the company, are calculated to produce substantially the same amount of revenues as the rates proposed by the company. "The rates proposed and the revenues requested by the company provide only about a 5% return upon the book value of the company's property, and only about 3% on the company's appraised value, which

may well be considered less than a fair return, and the only legal justification for the commission in this case in prescribing so low a return is the limited request made by the company." Commission's Finding and Order, p. 33. Upon the facts and considerations presented, the commission prescribed a schedule of uniform rates and charges for patrons and classes of service, applying both in the city and in the outside towns and including, as to New Haven as well as the other towns, a charge for fire service based upon a rate per hydrant and per inch-foot of mains.

From the order of the commission the city appealed to the Superior Court, and upon that appeal the trial court reached the following conclusions: That in applying to the commission the company was within its legal rights and was not under any obligation to resort to arbitration. "Upon such an application, the commission had authority to determine whether the duration of the rates was unreasonable, and so finding, to fix the duration and their amounts. The provisions in the contract between the city and the company concerning the city's right to receive water for municipal purposes and public fire protection upon the terms set forth in the contract, are not rate matters, and therefore the commission had no power to order rates to be paid by the city for water furnished for such purposes. The commission was correct in permitting an allowance to the company of a reserve for depreciation. The company's plant is a consolidated and unified system for all its customers in the territory it serves, and therefore, as a matter of law and of fact, the order of the commission did not constitute discrimination in fixing the same rates for similar or identical service in the surrounding towns, as for such service in New Haven. In times of a major economic depression, of which judicial notice may be taken, a

forty per cent increase in rates, required solely to provide dividends of eight per cent upon the capital stock of a corporation which has a surplus of $2,695,344.67 of which $1,929,840.17 represents the accumulation of earnings from the past, is unreasonable. The action of the commission in fixing the rates to provide funds for the company ample to secure, after the payment of all other expenses, the distribution of an eight per cent dividend without regard to the ability of the consuming public to sustain such a burden during a time of a major economic depression is illegal." In consequence the appeal was sustained and judgment entered declaring the rates prescribed for the city of New Haven and its inhabitants, in the order of the commission, illegal, null and void, setting them aside, and remanding the matter to the commission for further proceedings. From this judgment the company appealed to this court and the city filed a bill of exceptions pertaining to conclusions which were adverse to its contentions on the trial.

The company's assignments of error are directed against the conclusions of the trial court that the increase in rates involved in the commission's order was unreasonable, in view of the existing economic depression, also that the contract provisions concerning water furnished the city for municipal purposes and public fire protection are not rate matters and therefore the commission had no power to order rates to be paid by the city for water furnished it for these purposes. Under these assignments the first claim is that, upon the trial, the reasonableness, as such, of the rates set forth in the contract and of those established and ordered by the commission was not in issue, but that the issues presented had been limited to certain specific points not affecting the general question of the reasonableness of the rates specified and ordered

by the commission. Analysis of the portions of the trial court's finding relevant to this claim, and the inferences therefrom, afford substantial and convincing support for this contention.

The city embodied in its original appeal from the commission thirty-five assignments of error in the findings, decisions, and order of the commission, some of which directly charged error in finding and deciding that the prescribed rates and charges are not discriminatory and are just, reasonable, and no more than adequate to enable the company to provide properly for the public convenience, necessity, and welfare. However, at the commencement of the trial the city filed a withdrawal of eleven of the reasons of appeal, including those last above referred to. Its counsel stated to the trial court that thereby were removed the issues whether the rates that the company was receiving prior to the action of the commission were inadequate—less than fair and just—and whether the new rates prescribed are adequate, fair and just, and that all of the questions intended to be raised, after and in view of such withdrawals, were questions of law, dealing with the construction of the contract for the most part. Being requested by the court to specify these issues so intended to be presented, counsel stated them in substance as follows: First, that under the terms of the contract the commission had no jurisdiction to deal at all with the rates prescribed and provided for in it, because, it was claimed, the contract placed those rates outside the powers of the commission under the statute creating it, and, further, that under the contract, even if the commission had power to deal with water rates in New Haven, the company must first resort to arbitration. "These questions," it was said, "are based solely on our contract" and "have no bearing on what is generally the case be-

tween . . . a public utilities corporation and its customers." Second, that the commission has no right to deprive the city of "its contractual right to pay for public and municipal water for municipal purposes and fire protection by paying a certain portion of the State franchise tax." Third, that the company, as distinguished from other public utilities, "because of the contract, and for no other reason, has no right to set up a depreciation reserve, but must pay for its renewals and repairs from year to year" and (Fourth) under the language of the contract it has no right to set up a surplus. Fifth, that the towns other than New Haven now being supplied by the company through its system are not entitled to the same rates as users in the city, because the city has a contract while they have not, also "because of physical, geographical and population conditions" it is reasonable and proper that they be charged a different and higher rate than inhabitants of New Haven.

The statement as a whole cannot fairly be construed otherwise than as meaning that if the court found (as it did), contrary to the first claim above mentioned, that the commission had power to regulate the New Haven rates, the city questioned those rates only as they might be affected by the succeeding subsidiary claims made by it, relating to specific elements alleged to be peculiar to the situation created by the contract, and which, if sustained, would affect those rates, but that the broad issue of reasonableness under and with reference to the general rules applicable in determination of rates of public utility corporations had been withdrawn and was not to be pursued in the appeal. This is confirmed by the concluding declaration of counsel that "If the court should find the commission has a right to tamper with our rates, then we don't attack the rates they fixed, either for the inhabitants

or for public fire and municipal water, and your honor can see, by eliminating those issues, we have eliminated most of the troublesome and time consuming features of a rate case."

The finding further shows that in the course of the trial the company offered opinion evidence of an expert witness, first, as to whether the rates specified by the contract were "just, reasonable and adequate to provide properly for the public convenience, necessity and welfare," and, second, whether the rates established by the commission are "more than just, reasonable and adequate" to provide properly for those purposes. Each of these offers was objected to by the city "solely on the ground that it isn't within the issues we are presenting to this court," counsel stating that by withdrawal of reasons of appeal "there are no paragraphs in the complaint on this subject." The objection was sustained and the evidence excluded. It also appears that this procedure—the manifest purpose of which was to confirm and establish by ruling that the issues had been so narrowed and limited—was agreed to by the parties and "was approved by the trial judge in view of the fact that the city conceded that the rates were reasonable, provided that none of its challenges to the conclusions of the commission are sound."

Further confirmation is furnished by significant indications afforded by the record pertaining to the operative facts. Counsel for the city declined to agree to a statement of facts first proposed by the company, for the reason that a large portion of it consisted of facts and figures bearing upon general issues of reasonableness of the rates, which the city regarded as immaterial and inadmissible in view of the withdrawal and elimination of those issues, the purpose of the withdrawal being stated to be that of obviating extended and ex-

pensive preparation for the trial of those issues, including audit of the company's books, and engineering preparation, and days of trial—"the longest . . . and most expensive part of the trial." The city concedes that the statement of facts finally agreed to and appearing in the finding includes all of the facts necessary to a decision by the Superior Court upon the issues submitted to it under the retained reasons of appeal.

This statement, while voluminous, consists of facts which are or might reasonably be deemed to be material to one or more of the questions which the city had designated as the issues remaining in the case, and fails to contain many facts which would be necessary to a determination of the basis for fixing rates under the general rules governing the exercise of that function. A basic consideration in deciding what are reasonable and proper rates to be charged by a public utility is the fair value of its property useful and being used by it in the service of the public, as just compensation consists in a fair return upon such reasonable value. *Minnesota Rate Cases,* 230 U. S. 352, 434, 33 Sup. Ct. 729, 48 L. R. A. (N. S.) 1151, and *Smyth* v. *Ames,* 169 U. S. 466, 18 Sup. Ct. 418, are but typical of a great number of cases in the United States Supreme Court (including those cited to this point in *Los Angeles Gas Co. v. Railroad Commissioners* (1933) 289 U. S. 287, 305, 53 Sup. Ct. 637), State courts, and public utility reports. Ascertainment of this value "is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts." *Minnesota Rate Cases, supra,* p. 434. These facts include the actual cost of the property—the investment the owners have made— the time and circumstances of the outlay and the effect of altered conditions, such as changes in the level of

applicable prices and the cost of reproduction. "The weight to be given to actual cost, to historical cost, and to cost of reproduction new, is to be determined in the light of the facts of the particular case." *Los Angeles Gas Co. case, supra,* p. 308. The determination of present value is not an end itself; its purpose is to enable an intelligent forecast of probable future values, as bearing upon the validity of rates for the future. *McCardle v. Indianapolis Water Co.,* 272 U. S. 400, 408, 47 Sup. Ct. 144; *Southwestern Bell Telephone Co.* v. *Public Service Commission,* 262 U. S. 276, 288, 43 Sup. Ct. 544. Other elements for consideration and to be given appropriate weight include the probable earning capacity of the property under particular rates, and the sum required to meet operating expenses. *Smyth* v. *Ames, supra.*

Likewise, ultimate conclusions as to the reasonableness of rates must be reached with due regard to their effect both upon the company and the public; they must not be so low as to be confiscatory or so high as to exceed the value of the service to the consumers. "No satisfactory definition of reasonable, as applied to rates, applicable to each case, can be made. Each must be decided upon its own facts and upon a consideration of many varying elements." *Turner* v. *Connecticut Co.,* 91 Conn. 692, 698, 101 Atl. 88. The nature and scope of the inquiry is such that the question of what constitutes a reasonable rate is primarily a question of fact, depending largely upon the circumstances of the particular case. *United Railways & Electric Co.* v. *West,* 280 U. S. 234, 251, 50 Sup. Ct. 123; *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287, 289, 40 Sup. Ct. 527; *Bluefield W. W. & I. Co.* v. *Public Service Commission,* 262 U. S. 679, 692, 43 Sup. Ct. 675. Our attention has not been called to, nor have we found, facts of record so inap-

propriate to the issues which concededly were in the case, or so significantly directed, instead, to more comprehensive issues concerning reasonableness of the rates as to indicate that the facts were presented with a view to the determination of such larger issues.

Also, the finding contains no facts concerning the economic depression and its effect upon the return to which the company is fairly entitled or upon the ability of the consuming public to pay increased water rates, or suggestion that these elements were considered by either party as within the issues being tried. The trial court, in resorting to these considerations and adopting them as rendering the rates unreasonable and illegal, appears to have acted upon its own initiative and to have relied for supporting facts solely upon judicial notice.

The withdrawal of reasons of appeal directly applying to the general reasonableness of the rates, with the expressed intention of eliminating these issues, did not specify one of the general introductory assignments (7) which alleged that the commission erred in changing and raising the rates to be charged the city and its inhabitants "contrary to the public interest and solely in the interests of the stockholders" of the company. It is indicated in the memorandum of decision that the trial court regarded this apparently inadvertent survival of the withdrawal process as so broadening the scope of the inquiry as to permit adjudication of the very issue which the appellant city had declared that it sought and intended to eliminate from the trial. The retention of this paragraph in the pleadings did not have that effect. Counsel may by agreement or conduct limit the issues made by the pleadings, and such limitation will be binding throughout the trial. *Brown* v. *Aitken,* 90 Vt. 569, 573, 99 Atl. 265, 267;

*National Life Assn.* v. *Speer,* 111 Ark. 173, 177, 163 S. W. 1188; *Leonard* v. *New England Mut. Life Ins. Co.,* 22 R. I. 519, 48 Atl. 808; *Barber* v. *Morgan,* 89 Conn. 583, 589, 94 Atl. 984; *People ex rel. South Glens Falls* v. *Public Service Commission,* 225 N. Y. 216, 219, 121 N. E. 777.

For the reasons above stated we hold that no issue to which the conclusions attacked by the assignment we have been considering would be applicable was pursued on the trial or available in the decision of the case and in consequence these conclusions are erroneous and nugatory. It is unnecessary, therefore, to pass upon the further contention of the company that, even if we should hold the reasonableness of the rates in these respects to have been in issue, the conclusions were not warranted either in fact or law.

Changes in economic levels resulting from depression have been taken into account, in rate cases, as affecting reproduction costs considered as an element in fixing the value of the property, and reduction in revenues of a public utility from a like cause has also been regarded. *Illinois Bell Telephone Co.* v. *Gilbert,* 3 Fed. Supp. 595; *Atchison, T. & S. F. Ry. Co.* v. *United States,* 284 U. S. 248, 52 Sup. Ct. 146. In dealing with rates and returns during periods of business depression, consideration has been given to the fact that the earnings of a public utility company in preceding prosperous times, because of regulation of its rates have been limited as contrasted with unregulated private business. Nash, Public Utilities Rate Structures (1933) p. 294. We have found no instance in which the effect of depression upon the purchasing power of the consumers has yet been accorded a controlling effect upon rates or expressly recognized as an independent factor in fixing them. However, we have

no occasion to determine the admissibility and potential weight of impaired ability of consumers to pay, resulting from economic depression, as a specific element or as a circumstance involved in a determination of the reasonableness of rates.

The city in its brief still maintains only that it "made certain claims of law which attacked the legality of the rates ordered by the commission," and that if none of these were sustained, the rates so fixed were to be found reasonable and adequate, but if one or more of them were sustained the rates were thereby to be found unreasonable "to the extent that such claim or claims of law, so sustained, affected the rate attacked." As to claims which were actually in issue, the effect would be as so stated. The trial court did sustain one of these—that the city was entitled to water for public fire protection and municipal purposes on the terms set forth in the contract, and unless the company can succeed in its attack upon this ruling, the result would be that the rates are held to be unreasonable to the extent that they are affected thereby, and this might necessitate a revision upward of other rates prescribed. The only question presented by the company's assignment of error in the conclusion that the commission had no power to prescribe and order rates to be paid by the city of New Haven for municipal purposes and public fire protection is whether the provisions in the contract between the city and the company concerning the city's right to water for these purposes are, as the trial court held, "not rate matters," and therefore beyond the powers to alter "the rates fixed in and by the contract" which were determined in *New Haven Water Co.* v. *New Haven, supra* (p. 581), to be vested in the commission. The pertinent provisions of the contract are contained

in the first and tenth sections, which are quoted in a footnote. The reserved question, in response to which the advice as to the powers of the commission was given in the prior case, was: "Has the plaintiff, notwithstanding its contract relations with the city of New Haven, the right to petition the Public Utilities Commission for an increase in rates to and within the city of New Haven, and has the Public Utilities Commission jurisdiction to increase said rates . . . ?" Therefore the scope of the question was such that the reply thereto may well be construed as meaning that the rates which this court there held might be changed by the commission, upon the finding specified, included rates *to* the city as well as to the inhabitants within it. The subsequent statement—"(4) The water

---

*"First*—Said Company will furnish said City with a full and adequate supply of water for all reasonable present and future public and municipal purposes whatsoever, wheresoever the mains of said Company now are or may hereafter be extended within the present limits of the City and within any future limits thereof, including water for school and fire protection purposes, whenever ordered by the City to do so, in the Thirteenth, Fourteenth and Fifteenth wards, for all time after the twentieth day of February, A.D. 1902, or until the termination of this contract in accordance with the provisions thereof, without cost or charge, in consideration of the promises hereinafter set forth."

*"Tenth*—Said Company shall pay such taxes as may be levied according to law upon its tangible property, including pipes, mains and reservoirs, within the City of New Haven and other towns in which such property may be located. In case any franchise or other tax, except upon its tangible property, shall be assessed against said Company, said City shall save said Company harmless from such part thereof as shall be measured by the ratio of the gross revenue received from consumers within the City of New Haven, to the gross revenue of said Company from all its consumers. Said City may, at its option, refuse to save said Company harmless, as heretofore provided, and in case of its failure so to do, it shall without other liability to said Company by reason thereof, pay during such period of failure, for water for fire protection the sum of twenty dollars per year for each hydrant, and for all other water used by said City at the lowest meter rates to private consumers, as per schedule then in force, less a discount of twenty-five per cent. (25%) therefrom."

company must furnish the city with water for public and municipal purposes . . . without cost or charge as provided under the provisions of the contract"—did not refer to or adjudicate the question above quoted, but related to the further and distinct question whether the company was entitled to be saved harmless by the city from a part of the Federal corporation income and capital stock taxes or, upon failure of the city to do so, to be paid, during such failure, the sum per hydrant and the meter rates specified in section tenth of the contract. The true purport of the quoted statement (4) is that as it had been held (3) that the city was not obliged to assume those taxes, the company must, notwithstanding the city's failure to save it harmless from them, furnish water to it without the charges specified to be payable in case of the city's refusal to save the company harmless from taxes which were within the purview of the contract provision.

If the first section of the contract stood alone, manifestly it would not constitute a rate matter, but it must be taken in connection with the tenth section, and, so considered, the provisions as a whole clearly contemplate and mean that the payment of the prescribed taxes constitutes a substitute for compensation for municipal water at rates applicable thereto. Recognition of this is evinced in one of the city's reasons of appeal from the commission (12) which claimed error "in finding and deciding it is unjust discrimination for the city . . . to pay for its water for public and municipal purposes . . . in the manner and at the rates provided for in said contract . . ." i. e. by assumption of certain taxes. An unquestioned finding (Par. 80) is that "the city has been paying, as provided in the contract, in lieu of any other charge for water furnished it for fire, public and municipal purposes, a portion of the State franchise tax. . . . The

cost of service to the city . . . is greater than the amount so paid." In its brief on this appeal the city admits that the service to the city by the company under the contract provisions has not been "free, but in return for substantial money consideration"—the agreed share of the state franchise tax assessed against the company. The foregoing considerations are sufficient to satisfy us that these contract provisions are fairly to be regarded as rate matters, and as such within the jurisdiction of the commission, and that the trial court was in error in its converse conclusion. No claim is made that the rates prescribed to be paid by the city are unreasonable if, as we hold, the commission had power to establish them.

For the foregoing reasons we hold to be erroneous the conclusions of the trial court which are attacked by the appellant's assignments of error. As the appeal may be disposed of by a direction of judgment and a new trial is not required, it is not incumbent upon us to consider and express opinion upon the questions arising on the city's bill of exceptions. *Cottrell* v. *Cottrell,* 106 Conn. 411, 422, 138 Atl. 438; *State* v. *Thresher,* 77 Conn. 70, 77, 58 Atl. 460. However, as some of these are of considerable public interest and importance and have been thoroughly and ably briefed and argued before us we discuss and determine them.

We first consider the claim that, even if *New Haven Water Co.* v. *New Haven, supra,* settled that the State has power to increase rates notwithstanding the contract, it did not determine the further question whether the power to alter the rates had been delegated to the commission, or remained merely reserved in the State. The opinion in that case, and the answers given to the reserved questions, especially when read with reference to the questions themselves and the record and briefs, amply refute this contention. Not

only did the question (2a) which we have already quoted present the inquiry "has the Public Utilities Commission jurisdiction to increase said rates" but a supplementary question (4) asked "are these rates subject to be increased by the Public Utilities Commission beyond the schedule of maximum rates fixed in and by the contract . . . ?" The record (Supreme Court Records and Briefs, Vol. 322, pp. 998, 1008) discloses that the issue that the statutes creating and governing the commission did not suffice to confer upon it power to alter the rates established by the New Haven contract was made by the city and was extensively briefed and (the brief in the present case admits) orally argued. It is clear that the point was actually involved and adjudicated in the former action and we find no reason to adopt the city's suggestion that, if it be found that this subject was so considered and determined, we now reconsider it and reverse the former conclusion.

Error is claimed in the conclusion that the company was under no obligation to resort to arbitration instead of applying to the commission. It was held in the earlier case (106 Conn. p. 576) that the contract makes no provision for arbitration at the instance of the company, although specifically giving that remedy to the city. It is now suggested that a stipulation additional to the contract, providing, *inter alia,* that "at the option of the city" the contract may be so construed that no person shall be charged any higher price than heretofore for the same service "unless changed by arbitration as provided in said contract," may not have then been taken into consideration. The stipulation was before the court in the former case and was referred to in the brief of the city as giving to it the power to obtain lower rates, without any suggestion that it authorized arbitration at the instance

of the company, and we are unable to agree that its provisions should or can be construed as conferring upon the company a right or duty, similar to that of the city, to resort to arbitration.

The bill of exceptions also questions the conclusion sustaining the commission in allowing, as an element in making up the rates established, an annual accrual for depreciation reserve. The city concedes that modern methods of public utility accounting approve the creation and maintenance of a depreciation reserve account, and that the courts have sustained and public utility commissions generally require such a fund. A public utility company is held to be entitled to a rate of return sufficient not only to provide for current repairs, but also to permit setting aside annually, and accumulating, as a depreciation reserve, such reasonable amount as is necessary to retire and replace the several units of property as their useful lives terminate. Such a company "is entitled to earn a sufficient sum annually to provide not only for current repairs but for making good the depreciation and replacing the parts of the property when they come to the end of their life." *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 13, 29 Sup. Ct. 148; *United Railways & Electric Co.* v. *West*, 280 U. S. 234, 252, 50 Sup. Ct. 123; *Board of Public Utility Comrs.* v. *New York Telephone Co.*, 271 U. S. 23, 46 Sup. Ct. 363. The city's claim is that, notwithstanding, provisions of section fifth of the contract limit the company, as to this element in the rate, to such an amount as is necessary for current annual "renewals, repair and replacement of plant" only, to the exclusion of such a depreciation reserve. A necessary and sufficient answer to this claim is that the contract provision relied on in terms applies to and purports to affect only the rates which might be fixed by arbitration, at the instance of the city, as

provided for in that section of the contract, and has no reference, either specifically or by appropriate analogy, to alterations of rates by the commission. As indicated in *New Haven Water Co.* v. *New Haven, supra* (p. 577), it is open to the commission, on proper application and finding, to fix the amount and duration of rates. In so doing, the commission acts irrespective of provisions and restrictions of the contract which were there held to work an inadmissible surrender of the police power and for that reason not effective to restrict the regulatory powers of the State. The commission, in exercising the powers delegated to it, is to be guided and controlled by the rules and principles governing its general functions in rate-making rather than by provisions of the contract relative to the elements prescribed for the fixing of rates in the instances and manner for which the contract might and did validly provide. Under these general rules and principles, depreciation and allowance for depreciation reserve are, confessedly, proper elements for consideration in determining rates, and the court was correct in sustaining the commission in including allowance therefor. It is conceded that if inclusion of this element was proper, the amount allowed was not unreasonable.

The further point pressed by the city relates to the conclusion sustaining the commission's action in prescribing a schedule of rates and charges in the city of New Haven identical or uniform with those specified for similar service in other towns served by the company. The city's claim—that by virtue of its contract with the company it is entitled to more favorable rates than those accorded outside towns—is disposed of by what has already been said as to the ineffectiveness of rate provisions of the contract as applied to the present proceeding. Turning to the general principles

relevant to rates to be charged by public utilities serving several different communities and customers or users therein, we find that "normally, the unit for rate making purposes . . . would be the entire interconnected operating property . . . used and useful for the convenience of the public in the territory served, without regard to particular groups of consumers or local subdivisions. But conditions may be such as to require or permit the fixing of a smaller unit." *Wabash Valley Electric Co.* v. *Young,* 287 U. S. 488, 497, 53 Sup. Ct. 234. In a case involving a large municipality and smaller surrounding towns, a higher rate may be prescribed for consumers in the smaller communities, without unlawful discrimination, provided it is not unreasonably high in comparison with the city rate, considering the respective costs of service and other conditions affecting rates. Such a differentiation, however, logically involves an apportionment of values, revenues, and expenses. 3 Spurr, Public Service Regulation, p. 606; *In re Village of Fennimore,* P. U. R. (Wis.) 1916A, 848, 858; *Long Branch* v. *Tintern Manor Water Co.,* P. U. R. (N. J.) 1918A, 178, 203. The difficulties attendant upon making approximately accurate allocations and fixing fair or satisfactory zone or other differing rates are manifest, and are not to be undertaken unless there are such differences in circumstances and conditions between different parts of the territory served as to justify departure from uniform rates. Where water furnished is all secured from the same sources, and is supplied to several contiguous communities embraced in one general district, with no unreasonable extensions to serve lean territory or other elements creating material difference in cost, a uniform rate for the entire territory is indicated and ordinarily justified. *Re Edison Illuminating Co.,* P. U. R. (Mass.) 1928D, 859, 862; *Ben Avon*

*Borough* v. *Ohio Valley Water Co.*, P. U. R. (Penn.) 1917C, 390, 420; *Re Missouri Gas & Electric Service Co.*, P. U. R. (Mo.) 1921D, 687.

The finding, here, is that while in 1902 the company was supplying service in the city and to comparatively few consumers in Woodbridge, Hamden and East Haven, now, by merger with other companies and development and extensions of its system, it supplies water to the following municipalities and their inhabitants: New Haven, Bethany, Branford, Cheshire, East Haven, Hamden, North Branford, North Haven, West Haven and Woodbridge. It also supplies water to the Orange Water Company, and to the Milford Water Company, a corporation controlled by it which supplies water to Milford and its inhabitants. "The facilities of the company as regards the collection and purification of the supply and transmission systems have been developed and are operated as a unit. The various sources of supply are so interconnected that it is possible to supply water to all parts of the system from all other parts of the system, and the supply of the various towns is, in the course of the year, derived from several different sources, the exact source of supply varying from time to time according to the conditions prevailing in the various reservoirs. . . . The boundaries between the city of New Haven and the adjacent towns are only in part natural boundaries, such as rivers or the like, and there are many vicinities in which the boundary line between New Haven and one of the neighboring towns runs through a section which is developed with substantial uniformity. . . . The supplies of water located in several of the towns are useful and used both to supply these towns and the city of New Haven and other towns in the area. . . . All of the sources of supply are so located as to be useful for the inhabitants of other towns than those of

New Haven." Application of the above mentioned general principles to the facts disclosed justifies the trial court's conclusions that the fixing of the same rates for similar service in the outside towns as in the city did not constitute discrimination invalidating such action.

There is error on the company's appeal; no error on the city's bill of exceptions; the judgment is set aside and the case is remanded to the Superior Court with direction to enter judgment dismissing the appeal from the public utilities commission.

In this opinion the other judges concurred.