# John J. Schofield vs. Winthrop A. Jackson et al.

*Third Judicial District, New Haven, June Term, 1923.
Wheeler, C. J., Beach, Curtis, Burpee and Keeler, Js.

In an action by a customer of a stock broker to recover damages for the alleged conversion of shares of stock and cash in the broker's hands belonging to the plaintiff, a material issue between the parties was whether a certain transaction was an order by the customer to buy seventy-five shares of a certain stock, as contended by the plaintiff, or was a purchase of the stock by the plaintiff directly from the broker, as the latter insisted and as the trial court found. *Held* that the evidence warranted the court in so finding, and therefore there was no error in rendering judgment for the defendant upon that branch of the case.

Another issue, raised by the defendant's counterclaim and the plaintiff's denial, was whether the defendant owned and could have delivered the shares of stock which he claimed to have sold to the plaintiff, the latter insisting that any such stock as the defendant owned or possessed was required to fulfil obligations of the defendant to third persons, so that no valid sale of the stock was effected on February 27th, 1920. This issue also the trial court found for the defendant. *Held* that inasmuch as this stock was not to be delivered at once, but to be carried in the plaintiff's account subject to sale or delivery on demand and payment of any balance due on the price, it was enough if, on the date of sale and continuously thereafter, the defendant either owned certificates for seventy-five shares of the stock which he was free to sell and deliver to the plaintiff, or by contract or otherwise was in a position to at once acquire or perfect title to such shares independently of the consent of any other person; and that since it appeared that with respect to two blocks of this stock amounting to one hundred and four shares he was at all times thereafter able to comply with these conditions, the defendant had the right to require the plaintiff to maintain a sufficient margin, and, on default thereof, to sell the stock and apply the proceeds to the credit of the plaintiff's account.

The trial court, notwithstanding its judgment for the defendant upon his counterclaim, refused to find that one of these two blocks of stock was owned by or was due to the defendant, and from this refusal the defendant appealed. *Held* that the finding must be corrected in this particular, as the fact was apparently undisputed;

*Transferred from first judicial district.

and that, as thus corrected, the finding fully supported the judgment for the defendant upon his counterclaim.

·    Argued June 14th—decided July 27th, 1923.

ACTION to recover damages for the alleged conversion of certain shares of stock and cash in the hands of the defendants belonging to the plaintiff, brought to and tried by the Superior Court in Hartford County, *Marvin, J.;* facts found and judgment rendered for the defendants on their counterclaim to recover $2,051.42 of the plaintiff, from which he appealed. *No error.*

The defendant appealed from the refusal of the trial court to correct its finding. *Finding corrected.*

The complaint alleges, in substance, that the defendants Jackson and Bull are partners carrying on the business of investment brokers in Hartford under the name of W. A. Jackson & Company, hereinafter referred to as the defendant; that the plaintiff was a customer of the defendant, and as the result of transactions between the parties prior to February 27th, 1920, defendant owed the plaintiff $1,257.51 in cash and one hundred and fifty shares of Mexican-Panuco oil stock; that on the date last named the plaintiff ordered defendant to buy for his account seventy-five shares of Ayer-Kempton common stock at $60 a share, and received notice on the same day that they had purchased the stock; that defendant did not purchase any Ayer-Kempton stock for the plaintiff's account, and that the plaintiff, learning that fact, revoked his order on November 29th, 1920, and demanded delivery of the one hundred and fifty shares of Mexican-Panuco oil stock and payment of his cash balance, but the defendant refused to make the delivery and payment, and converted both stock and cash to its own use.

The defendant's answer denied that Bull was a

partner in Jackson & Company, denied that the plaintiff ordered the defendant to purchase seventy-five shares of Ayer-Kempton stock, and denied the conversion. In a second defense it is alleged that the business of the defendant included the underwriting of issues of stock, and placing upon the market original issues of stock and other securities of corporations; that on February 27th, the plaintiff ordered of the defendant seventy-five shares of Ayer-Kempton stock at $60, total $4,500, and on the same day defendant notified the plaintiff that it had sold him the stock and sent him a statement showing the balance of account and collateral security held; that from time to time the defendant sent the plaintiff similar statements, and on November 30th, 1920, a complete detailed statement of the plaintiff's account showing a debit balance of $3,185.65, against which it held as collateral one hundred and fifty shares of Mexican-Panuco oil stock and seventy-five shares of Ayer-Kempton stock; that on February 27th, 1920, the defendant had in its possession certificates for seventy-five shares of Ayer-Kempton stock which it stood ready to deliver, and was at all times ready to deliver seventy-five shares of the stock to the plaintiff on payment of the balance of his account; that the plaintiff never offered to pay the balance, and never demanded the stock; that about January 1st, 1921 (after this suit was brought), the defendant notified the plaintiff of insufficient margin and demanded payment of the balance due, and not receiving payment, sold the collateral and credited the proceeds to the plaintiff's account, leaving a balance due the defendant, as of January 6th, 1921, of $1,882.58. In five other separate defenses the defendant enumerates specific blocks of Ayer-Kempton stock which it alleges that it either owned on February 27th, 1920, or was then by contract or otherwise entitled to. And by

Schofield *v.* Jackson.

counterclaim it demands damages for the plaintiff's failure to pay his alleged debit balance.

· In the plaintiff's reply he admits the allegations of the second defense as to the statements rendered by the defendant to the plaintiff, and as to the contents of the accounts transmitted by the defendant to the plaintiff, but denies that such statements were "truthful or correct." He does not otherwise deny the allegations of the second defense, stating in substance that the transaction of February 27th, 1920, was a purchase by the plaintiff and a sale by the defendant of Ayer-Kempton stock. The plaintiff denies that the defendant then owned and was at all times ready to deliver seventy-five shares of the stock, and alleges that any such stock as the defendant owned or possessed was offset by and required to fulfil the obligations of the defendant to third parties. The specific allegations of the other separate defenses and the additional allegations of the counterclaim are denied.

The court found all the issues on the complaint and counterclaim for the defendant, and gave judgment accordingly.

*Ralph O. Wells* and *John J. Burke,* for the appellant (plaintiff).

*John W. Joy,* for the appellees (defendants).

BEACH, J. The complaint describes the transaction of February 27th, 1920, as an order by the plaintiff to the defendant to buy for the plaintiff's account seventy-five shares of Ayer-Kempton stock at $60; and alleges that the defendant did not in fact buy any Ayer-Kempton stock for the plaintiff's account. The theory of the cause of action alleged, is that because the defendant did not buy the stock when ordered to do so,

it had no right to charge the plaintiff's account with the purchase price, and no right thereafter to apply the plaintiff's cash margin and collateral in satisfaction of the debit balance thus created. *Skiff* v. *Stoddard,* 63 Conn. 198, 26 Atl. 874, 28 id. 104.

The defendant's answer and counterclaim describes the transaction as of an entirely different character, as a purchase of the stock by the plaintiff directly from the defendant; and the court so finds the fact.

If this finding stands, as we think it must, it is apparent that the court did not err in giving judgment for the defendant on the issues raised by the complaint and the denials of the answer.

The plaintiff excepts to the finding that the transaction in question was one of purchase and sale between the parties, but the evidence annexed to the exception fails to support it. It appears from findings not excepted to, that defendant was under contract with the Ayer-Kempton Corporation to market an entire new issue of one thousand shares of preferred and two thousand shares of common stock; that the defendant was selling the stock to customers at prices fixed by the defendant, and that the plaintiff knew that the stock was not listed on the market, but was an original issue the sale of which the defendant was promoting. And the written memorandum which the plaintiff received and offered in evidence as Exhibit A, was a memorandum of a sale directly from the defendant to the plaintiff. It appears that the plaintiff made no objection to the memorandum, or to the statements of account thereafter rendered from time to time, as the reply admits. It is true that the plaintiff testified that his verbal order of February 27th was in form an order to buy the stock for his account; but the court was not bound to accept that statement, in view of the other facts showing that the plaintiff must have understood

that he was buying, and had bought, part of an original issue of stock which the defendant was marketing.

The remaining questions in the case relate to the judgment for the defendant on its counterclaim. The counterclaim and the judgment, which allows interest on the debit balance of the plaintiff's account from February 27th, 1920, proceed on the basis of a present sale of the stock to the plaintiff on that date. Other terms of the transaction appearing from the defendant's Exhibit 2, signed by the plaintiff, were that all securi-ties from time to time carried in the customer's account or deposited to protect the same, might be loaned or pledged by the defendant without further notice to the customer. The transaction differs from the ordinary margin purchasing contract, in that the defendant was bound to effect a valid present sale of seventy-five shares of Ayer-Kempton stock, instead of purchasing it for the plaintiff's account. After effecting the sale, the rights and duties of the parties were substantially the same as if the stock had been purchased on a margin for the plaintiff's account.

The principal controversy is as to whether a valid present sale was effected on February 27th, 1920. As the stock was not to be delivered at once, but to be carried on the plaintiff's account subject to sale or delivery on demand and payment of any balance due on the price, the defendant was not bound to have a certificate for the stock transferred into the plaintiff's name, for that would have made it impossible for the defendant to loan or repledge the stock without procuring a new assent and endorsement from the plaintiff. The defendant was required to do no more than to make a constructive delivery of seventy-five shares from itself as vendor to itself as pledgee. In order to do that, it must, on February 27th, 1920, have been the owner of seventy-five shares of Ayer-Kempton stock

which it had a right to sell to the plaintiff. That is to say, it must either have owned a certificate or certificates covering seventy-five shares which it was free to sell and deliver to the plaintiff, or it must have been, by contract or otherwise, in a position to at once acquire or perfect title to seventy-five such shares independently of the consent of any other person; and it must thereafter at all times be in the position of a pledgee carrying seventy-five shares, though not necessarily the same seventy-five shares, for the account of the plaintiff subject to sale on request or delivery on demand and on payment of any balance due on the price. On compliance with these conditions, it would have the right to require the plaintiff to maintain a sufficient margin, and in default thereof to sell the stock and apply the proceeds to the credit of the plaintiff's account.

- The defendant specifies several blocks of Ayer-Kempton stock which it claims to have been in a position to sell to the plaintiff on February 27th; 1920, and to deliver on demand and payment at any time thereafter; but we deem it unnecessary to refer to more than two of them.

It is found that on February 27th, 1920, the defendant had a certificate for fifty-four shares in the name of one Stempel, which was delivered by Stempel to the defendant to cover the balance of his account in view of insufficient margin under an agreement that the defendant could use the stock as it chose, either retaining it as collateral or selling it to make good Stempel's margin. This stock was pledged by the defendant with Stoneham & Company as collateral for a loan, and remained so pledged until the loan was paid and the stock sold for the account of the plaintiff in January, 1921.

It is also found that the defendant's contract with

the Ayer-Kempton Corporation provided that defendant should receive, as a bonus for placing the whole issue of three thousand shares of common and preferred stock, two hundred and fifty shares of common stock, and for placing any number of shares less than the whole an aliquot part of two hundred and fifty shares. The defendant claimed that on February 27th, 1920, sufficient of the common stock had been sold and transferred to customers, so that there was then due to the defendant from the Ayer-Kempton Corporation fifty shares of common stock. The court refused to so find and the defendant has excepted. The evidence certified on this exception consists of the testimony of the defendant's bookkeeper, supported by the defendant's ledger, Exhibit 1, that on February 27th, 1920, six hundred and seventy-four shares of the common stock had been sold and transferred to customers; and the testimony of W. A. Jackson that fifty shares of common stock was then due him on the contract on stock that had been fully, paid for. No conflicting evidence is certified under this exception, and the evidence appears to be undisputed and based on books kept in the ordinary course of business. We think the finding must be corrected to show that fifty shares of common stock was by contract due the defendant from the Ayer-Kempton Corporation on February 27th, 1920; and it being further found that no bonus stock was issued to the defendant until May, 1921, when seventy-five shares were so issued, it seems that the defendant was on February 27th, 1920, in a position to sell to the plaintiff, and at all times thereafter was in a position to deliver to the plaintiff, seventy-five shares out of this bonus stock and Stempel stock.

It is assigned as error that the court, in its memorandum of decision, held that the burden of showing that the defendant did not have the stock was on the

plaintiff, and since the counterclaim alleged a different transaction from that alleged in the complaint, we are of opinion that the court erred in so ruling. But the case is so clear on the finding as corrected, that the error was harmless. Thus corrected, the finding fully supports the judgment on the counterclaim.

The conclusion we reach makes it unnecessary to determine whether or not the defendant Bull was a partner in Jackson & Company.

There is no error.

In this opinion the other judges concurred.