EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *vs.* BENJAMIN SLADE.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

452

Argued November 6th, 1936—decided January 8th, 1937.

*Morris Tyler,* for the appellant (plaintiff).

*Benjamin Slade,* with whom, on the brief, was *Louis Weinstein,* for the appellee Slade (named defendant).

BROWN, J.  This action was brought to foreclose a mortgage given by the defendant Slade to the plaintiff, the complaint demanding, in addition to foreclosure and possession of the mortgaged premises, a deficiency judgment.  On June 7th, 1935, a judgment of strict foreclosure was rendered in favor of the plaintiff, the amount of the debt being fixed at $112,173.82 with interest from that date, and the law day for the defendants was set as October 8th, 1935.  Thereafter, on October 11th, 1935, on the plaintiff's motion, three appraisers were appointed to appraise the premises and make report under § 5083 of the General Statutes. That appraisal was made on October 11th and filed with the clerk of the court on October 16th, 1935. Thereupon the defendant Slade filed a remonstrance to the report, hearing upon which was concluded February 14th, 1936, and on March 24th, 1936, the supplemental judgment appealed from, sustaining the remonstrance and denying the deficiency judgment, was entered. February 12th, 1936, the defendant Slade filed a plea to the jurisdiction of the court to render a deficiency judgment on the ground that under § 5083 of the General Statutes no deficiency judgment could be granted because more than ninety days had elapsed since October 8th, 1935, the date fixed for redemption

by the foreclosure judgment, and issue was joined thereon March 18th, 1936. By its judgment the court overruled this plea. During the hearing on the remonstrance, the defendant Slade made the claim of law that the court could not render a deficiency judgment because of the lapse of ninety days from the law day fixed by the judgment of foreclosure. Upon the court's action in overruling this claim the defendant has predicated a bill of exceptions.

The principal question which is determinative of this appeal is whether the court erred in sustaining the remonstrance and denying the plaintiff's motion for a deficiency judgment. This calls, first, for the determination of the extent of the court's power of review in passing upon a remonstrance to the report of appraisers under § 5083. The statute precludes a review by the court of the question of value as a question of fact, and limits the inquiry before it to questions of law. What the Legislature evidently intended was that the action of the appraisers should be final and conclusive unless upon direct attack by some established procedure. *Connecticut Mutual Life Ins. Co.* v. *Rogers*, 113 Conn. 14, 17, 154 Atl. 246.

That this is so is indicated, first of all, by the history of this legislation. Until 1833 a judgment of foreclosure barred any further action on the mortgage debt. Chapter 18 of the Public Acts of 1833 removed this bar, and, ever since, the mortgagee's right to a deficiency judgment has always been coupled with some provision for fixing the actual value of the property as of the date of the foreclosure, as a basis of valuation for determining any claimed deficiency. *Acampora* v. *Warner*, 91 Conn. 586, 588, 101 Atl. 332. The 1833 statute provided for the determination of this value by the court before which the action was pending. This continued to be a function of the court

until, by § 2 of Chapter 129 of the Public Acts of 1878, the present provision of § 5083 was first enacted, transferring it to three disinterested appraisers, and that there might be no doubt that the court's function in determining value in all its aspects had been transferred to the appraisers, the act provided: "such appraisal shall be final and conclusive as to the value of said mortgaged property." The provision of § 5083, first appearing in § 4124 of the Revision of 1902, permitting the court to enter a judgment for the deficiency between the debt and the appraisal, was obviously to do away with the necessity of bringing a separate action to satisfy the debt, and in no way affected the power in the appraisers to determine the value of the mortgaged property. Thus, under the statute as it existed from 1833 to 1878, the court's determination of value was conclusive upon the parties because it was a question of fact which this court would not review. The Legislature being aware of this, obviously intended by the phrase above quoted to give to the report of the appraisers the same status.

Appraisers appointed by the court under this statute act in a quasi-judicial capacity. *Dunn* v. *Flynn,* 107 Conn. 272, 274, 140 Atl. 204. While the statute makes no provision for a review of the appraisers' action, we have held that their function is similar to that of appraisers appointed in condemnation proceedings to assess benefits and damages. Therefore a remonstrance lies against their report for any irregularity by which the rights of either party have been infringed. *Antman* v. *Connecticut Light & Power Co.,* 117 Conn. 230, 239, 167 Atl. 715; *Congress Bank & Trust Co.* v. *Brockett,* 111 Conn. 490, 492, 150 Atl. 742; *Wilcox* v. *Bliss,* 116 Conn. 329, 333, 164 Atl. 659. But in condemnation proceedings we have held repeatedly that the trial court in reviewing the report of a committee

cannot upon a remonstrance retry an issue of fact tried by the committee. *Fox* v. *South Norwalk,* 85 Conn. 237, 241, 242, 82 Atl. 642; *Walz* v. *Bennett,* 95 Conn. 537, 540, 541, 111 Atl. 834; *State* v. *Suffield & Thompsonville Bridge Co.,* 82 Conn. 460, 465, 74 Atl. 775. The general principle recognized in these cases indicates the extent of the court's power of review in passing upon the defendant's remonstrance to the appraisers' report in the present case. In short, as already stated, its power to review the question of value here does not extend to the determination of it as a question of fact but is limited to questions of law.

Having in mind that this is the extent of the court's power in such cases, what, if any, question for its consideration was raised by the defendant's remonstrance? Of the four grounds stated therein, it is apparent that the first only can possibly be construed as raising a question of law proper for the court's consideration. Of the other three, one directly raises the question of fact as to the value of the property, and the other two relate to facts claimed to have a bearing thereon. As to these, of a strikingly similar situation presented in *Fox* v. *South Norwalk,* supra, p. 242, we said: "The . . . grounds of remonstrance each state that damages assessed are too large or benefits appraised too small. The amounts of damages and benefits were questions of fact to be determined by the committee, and his finding is conclusive, and the question will not be retried by the court."

The first ground is that the appraisers' report "is erroneous and is based upon a mistaken basis of the meaning of the term 'fair market value,' viz.: that the fair market value of said property is $97,000." This ground of remonstrance does not present the question included in one of the trial court's conclusions, that the appraisers erred in determining the fair

market value of the property rather than its actual value, and we disregard that question as not within the issues presented by the remonstrance. Nor does this paragraph of the remonstrance accord with proper practice. To present a claim that the appraisers proceeded upon an erroneous basis in arriving at the value they reported, the remonstrance should have specifically alleged the respect in which it is claimed they committed error. Practice Book, § 173 (d); *Appeal of Cohen*, 117 Conn. 75, 81, 166 Atl. 747. But the plaintiff took issue with the remonstrance and proceeded to a hearing without raising any objection to the generality of the allegation and we must regard that defect as having been waived. This ground, upon as liberal an interpretation as the defendant can claim, may be construed as charging that the appraisers labored under an erroneous concept of value. So interpreted, applying the general principles already recited definitive of the court's power, the issue upon the defendant's remonstrance was limited to an inquiry by the court as to what elements the appraisers considered or methods they used in arriving at their conclusion. So much is permissible, the appraisal here being confined, as is proper under § 5083, to the value found, without supporting facts. Beyond this the court could not go. A committee's finding of fact is beyond revision or correction by the court "if there be no illegality in the mode of proceeding and no intentional wrong-doing. Errors of judgment as to the value of property must stand uncorrected." *Stannard* v. *Sperry*, 56 Conn. 541, 546, 16 Atl. 261. Such has long been the rule in this State determined by our early decisions. *Ashmead* v. *Colby*, 26 Conn. 287, 312, 313.

Consideration of two vital attributes involved in the appraisers' discharge of their duty here under § 5083,

illuminates the necessity of confining the trial court's power of review within the narrow limits above stated. In the first place, having no power under the statute to summon witnesses or hear evidence, as does a committee named in proceedings to hear evidence and make a report based upon it, they are appointed that they may, in the light of such personal knowledge as they have or may acquire, bring to bear upon the matter of value their own judgment. In so far as their conclusion involves the exercise of judgment upon their part, it of course cannot be reviewed. Those estimates made by them in arriving at their ultimate conclusion of such elements as the present fair rental value of the property, the amount of decrease generally in rentals from a given past period, or the amount of probable increase thereof for the future, the replacement costs involving the unit value adopted, and the amount of depreciation, are none of them matters which can be reviewed.

In the second place, the appraisal is not made by one individual but is the joint act of all three, bringing to bear upon the problem the individual knowledge and the individual judgment of each, affording the opportunity for the correction of an individual member's error by action of the others. It is for this reason that a mistake by a single appraiser is insufficient to invalidate the appraisal reached by all three acting jointly. In no case can an appraisal so determined be set aside in the absence of a showing of some serious mistake of fact or the adoption of an erroneous principle of law which substantially affected it as made by the three considered as a joint board. While inquiry of the individual appraiser as to the principles and methods which he used is permissible where an appraisal is challenged on these grounds, the ultimate inquiry must be, not whether the indi-

vidual appraiser made a mistake, but whether there was a mistake of fact or law which substantially affected the appraisal which was finally made. Whether the trial court erred in its conclusions sustaining the remonstrance on the first ground, is to be determined by the application to this case of the principles we have discussed.

It is the actual value of the property as of the date when title vested in the plaintiff under the foreclosure decree which it was incumbent upon the appraisers to determine under the statute. *Staples* v. *Hendrick*, 89 Conn. 100, 103, 93 Atl. 5. And since it was undisputed that there was no market for the property at the time, other methods of valuation than market value were properly resorted to by them, one of which properly to be utilized is estimation of reproduction cost less depreciation. *Underwood Typewriter Co.* v. *Hartford*, 99 Conn. 329, 122 Atl. 91. Another proper method is capitalization of estimated gross rentals, *Lomas & Nettleton Co.* v. *Waterbury*, 122 Conn. 228, 188 Atl. 433, as to which prospective as well as present and past earnings are an important element for consideration. *Somers* v. *Meriden*, 119 Conn. 5, 12, 174 Atl. 184.

The conclusions of the trial court relate to what the appraisers did incident thereto, and reduced to their simplest terms were: (1) that in applying the second method, by taking the actual earning capacity of the building as of October, 1935, in disregard of its higher earning capacity in "normal times," the appraisers adopted an erroneous "yard stick" and that "with the restoration of normal economic conditions" the property would bring in a greater income; (2) that in valuing the property by the first method the appraisers made a mistake as to the cubic content of the building, and also (3) that in allowing for depreciation they

neglected to take into consideration the fact that between $75,000 and $80,000 were spent for improvements "a few years" before.

As regards (1), whether the building would probably have a greater earning power in the reasonably near future was in itself a matter of judgment, for no one could know that as a fact. Thus the testimony of the defendant's witness Clark that "in normal times" it would have a greater earning capacity was of no vital significance, for it is obvious that he could not know when "normal times" would come again. Nor is his testimony that past earnings over a ten-year period should be taken as a basis of rental value, of significance upon the issue in question, being merely an expression of his opinion. And so far as the record discloses, the appraisers did not agree with him, as one of them specifically testified. The situation revealed then is not one where the appraisers believed rentals would increase but acted in disregard of that fact. Upon the record, therefore, where such conduct upon their part does not appear, we are unable to say that they adopted a wrong principle of law in arriving at their valuation.

So far as (2) above is concerned, no substantial error appears as to the cubic content of the building taken by the appraisers as a basis of their calculation. Appraiser Oviatt, who chiefly relied upon the replacement method, said that the cubic content was "over 200,000 feet," while the testimony of the defendant's witness Von Beren that the building is six stories for "a certain depth. I think it is about 30 feet," and then it dropped down to five, sufficiently indicates that he gave a rough estimate only, as distinguished from a computation based on precise measurements, when he stated the content first at 207,675 and then at 221,175 cubic feet. This was the only evidence

offered by the defendant to show a mistake by the appraisers in this particular. In view of its purport and nature it is insufficient to support the conclusion by the trial court that the appraisers had made so substantial a mistake of fact in this regard as to invalidate their report.

As regards (3) above, the money for improvements was in fact spent in 1923. In response to the defendant's questions to elicit his opinion of the replacement value of the building, Von Beren testified that starting with that date he had figured a total of 24 per cent. as the proper depreciation. While Appraiser Molloy did not use the depreciation method, and Appraiser Ronaldson did not consider the amount spent in 1923, the latter did take into consideration "all the present physical things that are there," and Appraiser Oviatt made his estimate of depreciation "on that building," and was not asked specifically about the improvements. Here again, as with regard to the period properly to be taken as a basis of rental value under (1) already discussed, whether Von Beren's method or that used by the two appraisers was correct, is a matter of judgment, and we cannot say that the appraisers in adopting a figure based upon the depreciation of the building as it was in 1935, instead of upon that ascertained by his twelve-years percentage method, proceeded upon a wrong principle of law. We therefore conclude that the appraisers did not as a whole act under any erroneous principle of law or substantial mistake of fact, which materially affected their appraisal made, justifying the court in setting it aside. The present record fails to disclose either any improper element considered or method employed by the appraisers, or any essential proper element not taken into consideration by them in arriving at their

conclusion. The court's holding to the contrary is unwarranted.

Although the court in its memorandum of decision discussed the effect of the provision of § 5083 for the entering of a deficiency judgment "at any time within ninety days after the time limited for redemption has expired" only in overruling the defendant Slade's plea to the jurisdiction, which alleged that more than ninety days had elapsed since October 8th, 1935, the date fixed for redemption, the defendant's bill of exceptions allowed by the court, shows that during the trial he made a claim of law based on the same ground, which the court overruled. The court was correct in overruling the plea, for its power to enter a deficiency judgment after the expiration of ninety days does not involve a question of jurisdiction, since a judgment entered after the expiration of the time limited by the statute though erroneous, is not void. *Ferguson* v. *Sabo,* 115 Conn. 619, 623, 162 Atl. 844. This is not determinative of the question raised by the bill of exceptions, however, and as the ruling attacked thereby was made during the course of the trial and was adverse to the defendant, it would be proper matter to include in such a bill. Practice Book, § 364. Previous to the revision in 1929 of the statutes concerning appeals to this court they had contained a provision for the filing of a bill of exceptions by an appellee, the questions arising thereon to be considered and the opinion of the court expressed "in case a new trial is advised." General Statutes, Rev. 1918, § 5839. In *State* v. *Thresher,* 77 Conn. 70, 77, 58 Atl. 460, we said of this statute: "Its purpose is not to obtain a review of errors committed in the progress of the cause as upon appeal, but to provide by way of anticipation for the conduct of a new trial which shall not fail by reason of doubtful questions upon which the presiding

judge may be required to act." See also *Broughel* v. *Southern New England Telephone Co.*, 72 Conn. 617, 626, 45 Atl. 435; *State* v. *Boylan*, 79 Conn. 463, 470, 65 Atl. 595; *Shaw* v. *Pope*, 80 Conn. 206, 211, 67 Atl. 495. In *Cottrell* v. *Cottrell*, 106 Conn. 411, 422, 138 Atl. 458, and *New Haven* v. *New Haven Water Co.*, 118 Conn. 389, 408, 172 Atl. 767, we applied this rule and stated that we were not required to pass upon a bill of exceptions where the case was remanded with direction to enter judgment; and in *Beach* v. *Beers*, 80 Conn. 459, 469, 68 Atl. 990, we applied it where we had directed a new trial unless a remittitur was filed, upon the ground that in all probability the case would not be retried.

Previous to the change in the statutes in 1929 the statute concerning appeals from the setting aside of a verdict contained a provision that upon such an appeal a bill of exceptions might be filed and if this court found material error upon it, it was not to direct that judgment be entered upon the verdict but was to order a new trial. General Statutes, Rev. 1918, § 5841. This provision seems to have been inserted by the revisers in preparing the Revision of 1902. Cf. Public Acts, 1897, Chapter 194, § 29; Public Acts, 1901, Chapter 89; Rev. 1902, § 806. See *Brown* v. *New Haven Taxicab Co.*, 92 Conn. 252, 256, 102 Atl. 572; *Fitch* v. *Hartford*, 92 Conn. 365, 102 Atl. 768; *Gager* v. *Mathewson*, 93 Conn. 539, 542, 107 Atl. 1; *State Bank & Trust Co.* v. *Connecticut General Life Ins. Co.*, 108 Conn. 680, 682, 144 Atl. 34. No similar provision was made where an appeal was taken from the refusal to set a verdict aside. The distinction was that in the latter case judgment would enter upon the verdict and an appeal could be taken from the judgment as well as from the refusal to set the verdict aside and questions that arose during the trial could be presented, while in

the former there would be no judgment from which to appeal and the losing party could not raise such questions by that method.

The provisions of the statutes we have referred to were omitted in the revision of the statutes concerning appeals in 1929 and the matter was left to be dealt with under the broad power given the judges to regulate appeals by rules of court. General Statutes, Rev. 1930, § 5700. Under these rules a bill of exceptions may be filed by an appellee, or by an appellant who has appealed from the granting of a motion to set the verdict aside, and the questions arising thereon "may be considered by this court in connection with those presented by the appeal." Practice Book, §§ 338, 364. While the express provision of the former statute that this court should give its opinion upon questions presented by a bill of exceptions "in case a new trial is advised" was not preserved in the rules, there was no intent to change the law as it previously had stood, certainly as regards appeals taken from judgments. In such cases the bill of exceptions does not take the place of an appeal but only authorizes an expression of opinion upon questions not presented by the appeal, in aid of a new trial if one is ordered. The defendant recognized the limited scope of the bill of exceptions he filed because in it, as his reason for asking that it be allowed, he stated that the rulings it included would again arise if a new trial of the case should be granted.

The right to appeal does not depend upon the fact that one has actually suffered a grievance, but upon the fact that one considers himself aggrieved. General Statutes, § 5689; Practice Book, § 334. If a party may be injured by an adverse ruling made in the course of the trial, he has sufficient ground upon which to base an appeal. *Yudkin* v. *Gates*, 60 Conn. 426, 427, 22 Atl. 776; *Guarantee Trust & Safe Deposit Co.*

v. *Philadelphia, R. & N. E. R. Co.,* 69 Conn. 709, 715, 38 Atl. 792. Even though a party prevails upon the trial, if there has been in the course of it a ruling adverse to him which may aggrieve him he may appeal. The proper course for the defendant to have taken in order to avail himself of the claimed error included in the bill of exceptions, should this court not order a new trial, was to file a cross-appeal from the judgment. *Watson* v. *New Milford,* 72 Conn. 561, 567, 45 Atl. 167; *Broughel* v. *Southern New England Telephone Co.,* supra, p. 619; see *Schofield* v. *Jackson,* 99 Conn. 515, 516, 122 Atl. 98.

As this case is remanded with direction to enter judgment and there will be no occasion for another trial, we do not pass upon the question raised by the bill of exceptions.

There is error, and the case is remanded to the Superior Court with direction to accept the report of the appraisers and to enter a supplemental judgment for the plaintiff.

In this opinion the other judges concurred.