CONNECTICUT BLUE CROSS, INC. v. THOMAS C. WHITE, INSURANCE COMMISSIONER, ET AL.

COURT OF COMMON PLEAS           HARTFORD COUNTY

FILE NOS. 110102, 109761

258.

Memorandum filed July 1, 1974

*Murtha, Cullina, Richter & Pinney,* of Hartford, for the plaintiff.

*Robert K. Killian,* attorney general, and *Richard M. Sheridan,* assistant attorney general, for the named defendant et al.

*Alexander A. Goldfarb,* of Hartford, for the defendants Irwin et al.

COLLINS, J. This is a consolidated appeal from a decision of Paul B. Altermatt, insurance commissioner, allowing the plaintiff, hereinafter called Blue Cross, a 5.61 percent rate increase in premiums for certain direct payment plans. Two appeals were taken from this decision, one under § 33-167 of the General Statutes and the other under § 4-183 (b), as amended by Public Acts 1973, No. 73-620 § 13. By agreement of the parties the appeals were heard, and are to be decided, together.

On August 13, 1973, Blue Cross, pursuant to § 33-166 of the General Statutes, filed with the commissioner a request for approval of certain rates to be charged by Blue Cross to its direct payment subscribers. On August 28, 1973, the commissioner held a public hearing on the request and on September 5, 1973, issued his finding and order in respect thereto.

Blue Cross has appealed, alleging that the order is illegal, unreasonable, capricious or in abuse of the discretion vested in the commissioner in specified

particulars. At the August 28, 1973, public hearing, Gail C. Irwin, Patricia A. Plourde, Gerald Shea and Allen Peichert were admitted as parties by the commissioner under § 4-166 (5) of the General Statutes and were cited in and served as defendants by Blue Cross in its appeal. In respect to the latter two individuals, a default for failure to appear was granted by this court on December 7, 1973.

The filing made by Blue Cross to the commissioner requested that it be allowed to discontinue direct payment contract SP-100 and that on other contracts it be granted a rate increase averaging 13.65 percent or, in the alternative, if direct payment contract SP-100 was to be retained, that Blue Cross be granted an average rate increase of 15.61 percent. The commissioner in his order chose to require Blue Cross to continue to offer direct payment contract SP-100, and in this appeal Blue Cross has accepted that decision.

After examining all the evidence and testimony submitted to him, the commissioner concluded that Blue Cross's existing rates were inadequate but that the requested 15.61 percent raise was excessive. He thereupon made five deductions totaling 9.66 percent, which he rounded off to 10 percent, and allowed a rate increase of 5.61 percent. Blue Cross takes issue in this appeal with four of the five deductions, and argues that this court, if it finds any of them unlawful, can, under § 4-183 (g) of the General Statutes, modify or reverse the commissioner's decision in respect thereto.

The defendants Irwin and Plourde, whose status in this appeal is questioned by Blue Cross and the commissioner, argue that (1) they are proper parties; (2) the insurance commissioner under General Statutes § 33-166 has no authority other than to approve or disapprove the filed schedule of rates;

(3) § 33-166 gives him no power to modify a filing; (4) Blue Cross has violated its duty to the public interest by allowing members of its board of directors to sit on boards of directors of member hospitals; (5) Blue Cross has not sustained its burden of proving that the requested rate increases granted were not excessive, inadequate or discriminatory; (6) the commissioner was justified in finding the application excessive; and (7) there was insufficient evidence to support one paragraph of the commissioner's decision.

The commissioner maintains that the record herein contains sufficient evidence to support his decision and that there is established precedent that the insurance commissioner has power to modify a filed schedule of rates under § 33-166.

When Blue Cross initiated this appeal, it cited in as defendants the insurance commissioner, his deputy, and the four individuals admitted as parties at the public hearing, and it argues herein that the four individuals were only made defendants because § 4-183 (b) provides that they must be served copies of the appeal.

Blue Cross has misread § 4-183 (b).[1] There is no requirement therein that all parties admitted to a public hearing before an agency must be included as parties in any appeal from the agency's decision. The sole requirement is that all such parties be served a copy of the appeal, and whether any such party would be admitted as a party defendant or a

---

[1] "Sec. 4-183. JUDICIAL REVIEW. . . . (b) Proceedings for review shall be instituted by filing a petition in the court of common pleas in the county wherein the aggrieved person resides within thirty days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within thirty days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record."

party plaintiff in any appeal is something for this court to determine on proper motion by such party.

Generally, courts are concerned with litigating the rights of parties with adverse interests who appear before them. *Rommell* v. *Walsh,* 127 Conn. 16, 22. Our adversary system mandates pleadings designed to set forth clearly the respective positions of the parties before the court. The elements of a cause of action or a defense must at some point be organized in relationship to the applicable substantive law, and pleadings become the culminating point for a complete analysis of a party's case in terms of that law. 1 Stephenson, Conn. Civil Proc. (2d Ed.) § 75c. Otherwise there can be no orderly administration of justice. *Malone* v. *Steinberg,* 138 Conn. 718, 721. This is as true for administrative appeals as it is for civil actions.

In this appeal, Irwin and Plourde, having been cited in as defendants and having filed no pleading which can in any way be construed as a cross appeal or a cross complaint, must be considered as having elected to have limited themselves to that status. Accordingly, this court cannot entertain any of the arguments they have advanced inconsistent with that position. See *Sumara* v. *Liquor Control Commission,* 165 Conn. 26, 33. Their point that their codefendant has no power under § 33-166 to modify a rate filing represents a position adverse to his and as such could only properly be raised by them after they had placed themselves in a position adverse to that codefendant by proper pleadings. Not having done so, they are limited to contesting the issues raised by the complaint which relate to them as codefendants. Affirmative relief can only be sought under a cross appeal or cross complaint, not through an answer. *Wilson* v. *Darien,* 130 Conn. 318, 322; *Equitable Life Assurance Soc.* v. *Slade,* 122 Conn. 451, 465; *Sturges* v. *Wagner,* 109 Conn. 1, 5; *Union*

*School District* v. *Bishop,* 76 Conn. 695, 699; see Practice Book § 78; *Rizzo* v. *Price,* 162 Conn. 504, 512.

Rate appeals are complex matters involving the forming of an opinion or evaluation by discerning and comparing complicated and often conflicting evidence. Such judgment, as exercised by an administrative agency, is not to be disturbed unless an appellant has sustained the burden of proving that in forming it the agency acted contrary to some statute or controlling rule of law or so arbitrarily and unreasonably as to have abused its discretion. *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 477; *Employers Mutual Liability Ins. Co.* v. *Premo,* 152 Conn. 610, 617.

The court has examined the entire record in this appeal and concludes that there is sufficient evidence therein to support the commissioner's judgment in every respect.

The effect of no-fault insurance on Blue Cross costs is something which will only be determined with any degree of probability by experience. The testimony of Blue Cross's vice president indicates, however, that experience could prove that it could conceivably result in a savings to Blue Cross as great as 5 percent. The commissioner's determination to deduct 3 percent therefor represents a reasonable estimate to ascribe to this factor at the time of this decision and cannot be disturbed.

Testimony further showed that Blue Cross realizes savings approaching 4 percent on group premiums from coordination of benefits. Admittedly, however, Blue Cross elected to treat this factor in this filing in the same manner as it had no-fault, that is, something to be experience rated. The testimony was to the effect, however, that there will be some savings attributable thereto and that on the

basis of an available study this could approach 2 percent. The commissioner's decision to accept that figure is, therefore, supported and is affirmed.

The 2 percent deduction for the downward trend in utilization of hospital beds is no longer in issue, Blue Cross having abandoned that portion of its appeal.

Blue Cross advances the argument that the law as stated by the Supreme Court in *Employers Mutual Liability Ins. Co.* v. *Premo,* supra, 618—that the commissioner has the right to consider records in his department and to call upon his background of expert knowledge—has been modified by the notice provisions in § 4-178 (4) of the General Statutes.[2] The claim is that he cannot take notice, in making his decision in this rate filing, of any facts or decisions he had found or made in previous filings, and that consequently he acted improperly in his decision in deducting 2.2 percent for Blue Cross's failure to eliminate its practice of paying an extra 5 percent above actual costs to member hospitals. This is too narrow a view of the provisions of subsection (4) of § 4-178 as applied to the facts of this filing. Blue Cross knew that a factor had been taken into consideration by the commissioner *in making a prior decision on a requested direct payment rate increase in* April, 1971; it further knew that he held at that time that that factor should not be passed on to Blue Cross's direct payment subscribers; yet in making this application

---

[2] "Sec. 4-178. EVIDENCE IN CONTESTED CASES. In contested cases: . . . (4) notice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed. The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence."

Blue Cross chose to ignore the prior decision, and it now argues that the commissioner cannot again take notice of the same situation even though its president's testimony clearly shows that it has continued the practice. It is an argument without merit. The notice requirements in subsection (4) are to protect parties in contested cases from having to cope suddenly with or answer suprising and unexpected material or evidence. That is clearly not the case here.

As to Blue Cross's argument in respect to one paragraph of the decision, § 33-160 of the General Statutes specifically provides that costs of management activities shall be under the supervision of the commissioner. Accordingly, he may take into consideration, when examining a filing for a rate increase, any projected additional administrative costs contained therein and make any reasonable provision therefor in determining a rate that is not excessive, inadequate or discriminatory. If in his judgment this can best be accomplished by providing that such costs are to be met out of investment income or contingency reserves, this court will not interfere. This also applies to his rounding off the final rate determination. Rates which are adequate and not excessive and/or discriminatory cannot be set with mathematical precision. The concept itself, as noted above, embodies the exercise of reasonable judgment. It is commonly known that knowledgeable and impartial men can and do disagree in particular cases as to what is reasonable. This court can only interfere when the administrative agency has clearly acted illegally, unreasonably and/or arbitrarily. It cannot substitute its discretion for that of the administrative agency nor modify the agency's discretion when properly exercised. *Sumara* v. *Liquor Control Commission,* 165 Conn. 26, 31.

The remaining arguments can be dismissed succinctly. That five of the eighteen members of the Blue Cross board of directors, including one who is a judge of the United States District Court for Connecticut, are also members of the board of directors of member hospitals violates no public duty which such directors may have, in the total absence of any evidence in this record that, in so acting, they have in some way contributed to Blue Cross's need for rate increases.

The statements in this record by the governor and state legislators are similar to others made at the public hearing or submitted to the commission. That these officials are publicly elected does not preclude them from being as entitled to state their views on this application as any other interested person, and whether their views were stated before or after Blue Cross presented its evidence at the public hearing is irrelevant. As the commissioner noted, the filing was a public record, and the facts contained therein were available to anyone who wished to examine them, days before the hearing took place. If there was some evidence in this record which would indicate that the commissioner was unduly or improperly influenced by these elected officials, there would be cause for this court to interfere. On the contrary, it appears that the commissioner gave no more weight to their views than he did to those of others expressed at the public hearing or submitted to him, and his decision was uninfluenced thereby. In times like these, public officials who take public positions on controversial matters should be praised, not criticized for doing so.

The commissioner's decision is affirmed and this appeal is dismissed.