GUILFORD-CHESTER WATER COMPANY *v.* EUGENE S. LOUGHLIN ET AL.

SUPERIOR COURT     HARTFORD COUNTY     FILE No. 100401

Memorandum filed March 16, 1955.

*Olcott D. Smith* and *Day, Berry & Howard,* both of Hartford, for the plaintiff.

*John J. Bracken,* attorney general, *William R. Connole* and *Louis Weinstein,* assistant attorneys general, all of Hartford, for the defendants.

ALCORN, J. On March 24, 1954, the plaintiff, a public service water company, filed with the defendant public utilities commission a proposal to increase its rates and charges for water service designed to provide additional annual revenue of approximately $57,000, effective as of July 1, 1954. The commission, after an investigation and hearing, found the proposed rates to be more than just and reasonable but did approve the filing of a revised

schedule of rates to provide additional revenue approximating 40 per cent of that proposed by the company. Thereafter the company took this appeal but, at the same time, secured proper authorization to operate under the rates to the extent approved by the commission, and has, since September 1, 1954, been operating under those rates.

The commission has, pursuant to the statute, filed a duly certified record of the case before it pertinent to the appeal. The function of the court is to "review, upon the record so certified, the proceedings of the commission and examine the question of the legality of the order, authorization or decision appealed from and the propriety and expediency of such order, authorization or decision so far as said court shall have cognizance of such subject and shall proceed thereon in the same manner as upon complaints for equitable relief." General Statutes, § 5427.

From the finding of the commission these facts appear: The company proposes to make substantial improvements in its water supply system at a total estimated cost of $800,000. This program is necessary in order to give adequate service to the company's customers. The largest item of this program is the extension of the company's system into the Cornfield Point, Knollwood, and Fernwood areas of Old Saybrook at a cost of approximately $312,000. The company has a contract with the town of Old Saybrook under which the latter guaranteed a revenue equal to 15 per cent of the cost of the extension. This guarantee, based upon the estimated cost of $312,000, will produce an annual revenue of $46,800. The company estimates revenues of $309,350 and operating expenses, depreciation and taxes of $226,827 for the year 1954, leaving an estimated operating income for that year of $82,523, based upon present rates. In arriving at the estimated revenue

of $309,350, the company included $37,350 referable to the Saybrook contract for a nine-month period. This should be adjusted to include the full twelve-month period, for which the revenue would be $46,800. After making that adjustment, $318,704 is a substantially accurate estimate of revenues based on present rates. Giving effect to other minor factors, this adjustment would indicate an operating income approximating $87,970 for 1954. In order to complete the construction and improvement program, the company proposes to issue and sell 11,000 shares of common stock. This is a proper method of financing the undertaking. It already has 25,000 shares of common stock outstanding on which the annual dividend payment totals $44,000. The operating income yielded by the present rates will be insufficient to meet all charges against income and dividend payments at the current rate on the outstanding stock and the new shares to be issued. It would be difficult to attract the needed new capital at the present earnings and therefore the present rate schedule is less than just and reasonable. The schedule of rates and charges proposed by the company would yield operating income of $115,700, which is more than necessary to preserve the company's integrity. A schedule which would yield operating revenues of $342,000 would produce operating income of $99,000 and this would be just and reasonable. Such a return would permit the company to maintain its dividend rate on its outstanding stock and on the 11,000 new shares to be issued. Any greater return would unnecessarily burden the company's customers and disproportionately compensate the owners of the company.

The question presented to the court by this appeal is whether, upon the record, the commission "has acted illegally or has exceeded or abused its power or acted arbitrarily or without notice and a reason-

able opportunity to be heard." *Kram* v. *Public Utilities Commission,* 126 Conn. 543, 550. No claim is made that the commission acted improperly in undertaking investigation of the proposed rates filed by the company and in holding hearings, nor could such claim validly be made. *New Haven* v. *New Haven Water Co.,* 132 Conn. 496, 511.

Upon the investigation undertaken, the question before the commission was to determine whether the proposed rates were "unreasonably discriminatory or more or less than just, reasonable and adequate to enable [the] company to provide properly for the public convenience, necessity and welfare," and to "determine and prescribe . . . just and reasonable maximum rates and charges to be made by [the] company." General Statutes, § 5409. This presented primarily a question of fact depending largely on the circumstances of the case and to be decided with due regard to the effect upon both the company and the public so that the ultimate conclusion should produce a rate not so low as to be confiscatory nor so high as to exceed the value of the service to the customer. *New Haven* v. *New Haven Water Co.,* 118 Conn. 389, 402. If the rate is not made high enough to cover the cost of service, the carrying charges, a reasonable sum for depreciation, and a fair return on the investment, it unduly deprives the company of its property without just compensation and is not reasonable. *Turner* v. *Connecticut Co.,* 91 Conn. 692, 699. The fixing of such a confiscatory rate would be illegal action upon the part of the commission. The burden of showing that such a result follows in this case rests upon the plaintiff company. *Kram* v. *Public Utilities Commission,* supra, 548.

The company complains that the commission failed to consider its evidence that it was entitled to utility operating income sufficient to maintain its present

dividend rate of 6.77 per cent without using for the purpose more than 84 per cent of its net earnings before dividends so that the balance might be carried to surplus. The company argues further that the commission arrived at a figure no more than sufficient to pay dividends and without making allowance for any amount to be carried to surplus. Finally it is asserted that this result came about largely as a result of making the adjustment for the full year's earnings on the contract with the town of Old Saybrook without, at the same time, making a corresponding adjustment for expenditures.

These claims reduce to the proposition that in taking the 1954 estimates as a working basis and adjusting the income without a corresponding adjustment for depreciation and expense the commission has arrived at rates which will not produce a reasonable balance to surplus after dividend payments.

The record discloses the following facts: With slight modification, the commission accepted the company's own figures as to income and expense. The company claimed that 20 per cent of net earnings was a reasonable amount to carry to surplus after payment of dividends and that its proposed rates would provide only 16 per cent. The proposed rates would mean an increase to customers, depending on their classification, ranging from 6.5 per cent to 52 per cent. The rates fixed by the commission produced an increase of 7.5 per cent to 15 per cent. The commission did not adjust expenses and depreciation on a yearly basis coincident to its adjustment of earnings upon that basis relative to the contract with the town of Old Saybrook. There was, however, no evidence before the commission from which it could accurately find the necessary items on the debit side for the entire year 1954. There was, on

the contrary, evidence before it to justify its finding as to the 1954 income. The utility operating income of $99,241 determined by the commission to be reasonable would fail to the extent of $128 to pay the dividend at the current rate after the issuance of the proposed new shares. The current dividend rate was first paid in 1953. At the dividend rate which obtained from 1946 through 1952, the income of $99,241 would pay the dividend and leave $232 to carry to surplus. There is no basis upon this record for an independent determination by this court as a matter of law that a payment into surplus in any specified amount or percentage is necessary to insure financial integrity to, and investor confidence in, this company.

The commission was faced with the problem of arriving at a just, reasonable and adequate rate schedule, having in mind not only the company but the public which it serves. It arrived at a schedule which made a significant increase in the rates paid by the public but considerably less on the whole than the proposed rates would have necessitated. At the same time, the schedule which it approved gave full effect to the company's own estimate of income and expense and allowed it an amount sufficient to meet its costs of service, financing, carrying charges, depreciation, and a return to its stockholders in excess of 6 per cent. The schedule did not, however, provide any significant amount to be carried to surplus for the year 1954. The commission has found, however, that the company's operating revenues have increased an average of 6 per cent per year from 1945 through 1953 and that the company's own estimate indicates an increase of 18.5 per cent in the operating revenues in 1954 over 1953. These findings are not attacked. The commission further finds that if the year 1955 shows the growth indicated by past experience there will be an additional amount to carry

to surplus. This is a reasonable assumption upon the record before the commission.

Upon the record the commission appears to have considered all the essential elements involved and has arrived at a factual decision based upon the evidence presented to it. The court is unable to conclude that, in coming to its decision, the commission acted illegally or arbitrarily or exceeded or abused the powers vested in it by statute.

Enter judgment dismissing the appeal.